MOLLER, Respondent, vs. J. L. GATES LAND COMPANY, Appellant.

*October 22—November 17. 1903.*

*Contract of employment: Terms: Evidence: Estoppel.*

Plaintiff claimed that he had been employed by defendant at a certain monthly salary in addition to the payment of his expenses and a commission on sales made by him. From time to time during his term of service he rendered statements of account in accordance with such claim, and defendant's officers made no objection thereto, but, with full knowledge thus brought home to them of plaintiff's understanding of the contract, gave no intimation that they understood it otherwise, for about eighteen months, while they encouraged plaintiff to continue his services. *Held*, that defendant was estopped to deny that the contract was as claimed by plaintiff.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

Action on contract to recover a balance alleged to be due thereon. The claim of plaintiff was that he was employed by defendant as its agent to promote the settlement upon by, and sale of its lands to, immigrants from Europe, the agreed

compensation for his services being a salary of $100 per month commencing February 1, 1899, payment of his expenses incurred in the course of his employment, including those incident to his journey from Milwaukee to the place selected for his headquarters in Europe, and allowance of a reasonable commission upon receipts for lands sold; that he continued in defendant's employ under such agreement from February 1, 1899, to August 18, 1901, during which time he incurred expenses chargeable to defendant under the agreement aforesaid to the amount of $1,315.85, and sold lands upon which he was entitled to a commission of $200; that the entire amount of indebtedness which accrued to him, including salary, expenses and commission, was $4,575.85; that the amount received thereon from defendant was $2,540, leaving $2,035.85 due, for which judgment was asked.

The employment of plaintiff by defendant was admitted by the answer, but it was alleged that the agreed compensation for his services was expenses not exceeding $2,000 and a commission of two per cent. upon lands sold by or through his instrumentality. It was denied that any commission was earned under such agreement, and alleged by way of defense, and also by way of counterclaim, that plaintiff had been paid the sum of $577.40 in excess of the $2,000 agreed upon. Judgment was asked upon the counterclaim for the excess payment. The allegations of the counterclaim were duly put in issue.

The case was tried before a referee, who found the facts as to the agreement in plaintiff's favor. The balance found due by the referee was $1,835.85. The referee's conclusions were affirmed by the circuit court and judgment was accordingly rendered, from which this appeal was taken.

The cause was submitted for the appellant on the brief of *Winkler, Flanders, Smith, Bottum & Vilas,* and for the respondent on that of *Joshua Stark.*

MARSHALL, J. There are several assignments of error upon this appeal. All of them may well be reduced to this: The trial court erred in confirming the findings of fact made by the referee as to the contract between the parties entitling respondent to $100 per month as a salary, a reasonable commission upon the amount realized for the sale of lands made by him or through his instrumentality, and the expenses incurred within the scope of his employment. The evidence of respondent was clear and positive to that effect. It was corroborated by the fact that he rendered statements of account from time to time during his term of service in all respects according thereto, particularly that feature thereof constituting the principal controversy, namely, the salary feature, and that no intimation was made by defendant's officers for a long period of time that such statements were not correct; that with full knowledge thus brought home to appellant of what respondent's view of the contract of employment was, its officers remained silent as regards their understanding of the matter for about eighteen months, while they encouraged him to continue to serve under such contract. As claimed by respondent's counsel, and doubtless as viewed by the referee and the trial court as well, such conduct on the part of appellant's officers is not in harmony with any reasonable theory, consistent with their being honest men, other than that when such statements were received they viewed the contract substantially as respondent did. Their failure upon the trial to explain such conduct certainly goes very far to corroborate respondent's evidence and to impeach theirs. There are other circumstances corroborative of the testimony of respondent, to which reference might be made, among which is the unreasonable character of the agreement claimed by appellant. The testimony of James L. Gates, who seems to have exercised all the power of the company in the matter, if true, would show that respondent agreed to take all the risk of the success of the business in which he was to engage,

except that of expenses, strictly so called, up to $2,000 per year, and to look wholly to the uncertain result of his labor as to making sales of land for compensation for his time, and to even leave it then further dependent upon uncertainty as to what might be considered reasonable. The testimony of Gates was that the respondent's compensation for his time should consist solely of a reasonable commission upon sales, limited, however, to two per cent. upon the proceeds thereof. Aside from the unreasonable feature referred to, Gates's testimony was further weakened by the fact that upon the first occasion of his differing with respondent as to the contract, which occurred, as before indicated, some eighteen months after he knew from statements rendered what respondent's view was, he said nothing about the latter's compensation for services being limited to a reasonable commission not exceeding two per cent. on sales of land. He then said that the agreement was that the respondent should have, for services and salary, expenses and a reasonable compensation or commission for work actually accomplished. No suggestion was then made that the expense account should not exceed $2,000 or any other sum, or that compensation for time should be upon the basis of a commission upon sales, as claimed in the answers subsequently served and in the testimony of Mr. Gates upon the trial. "Compensation or commission" is a very uncertain term. It might be construed reasonably in either of several ways; and the same is true of the term "work actually done." That seems to have been appreciated when the witness came to verify appellant's answer. He must have known as well when he first took issue with respondent as to the contract, what occurred between them, as later; and he alone did the talking on behalf of the company, if we are to believe his testimony. He assumed, according to his language, to be the company. The language used by him upon the trial was this:

"I made an agreement that I would put in $2,000 to defray expenses in the effort to procure settlers for our land;

and further in the event of settlers coming that we succeeded in selling that we would allow him a small commission not exceeding two per cent."

He said nothing about any person being concerned in the conversation with respondent when the contract was closed but himself, or that any other person was then present.

To corroborate the testimony of James L. Gates appellant depended upon his son, Robert L. Gates, the secretary of appellant, and Julius Jungblut, its treasurer. Their interests in the result of the litigation, and relations to James L. Gates, warranted the court in not giving to the testimony of the three much greater, if any more, weight than to the testimony of James L. Gates standing alone. The claim is made by appellant that Jungblut and Robert L. Gates knew personally what passed between James L. Gates and respondent at the time the contract was made, and that their evidence in that regard was not given due weight by the referee, he regarding the same as hearsay. We find nothing in the findings and opinion of the referee indicating such want of appreciation. The referee said in his opinion that the evidence of Jungblut and Robert L. Gates was "to a large extent hearsay," based upon general conversations between them and James L. Gates in the absence of respondent, rather than statements of what the witnesses heard pass between James L. Gates and respondent. It seems that he had good warrant for so viewing the evidence. Jungblut's evidence did relate largely to what occurred between himself, James L. Gates, and Robert L. Gates in the absence of respondent. He testified that he did not remember of having any conversation with respondent himself as to the contract. He said further, it is true, that he heard the arrangement between James L. Gates and respondent and that it was that the company would spend $2,000 through respondent in exploiting its lands abroad, and in addition would pay him a commission of not exceeding two per cent. upon sales made, nothing being said

about salary, and the term "expenses" not being used. The greater part of the testimony of Robert L. Gates is foreign to any conversation between him and respondent or between the latter and any one else as to the contract. He did not testify to any statement made by James L. Gates or by respondent at the time the contract was made, or testify distinctly that he heard what was then said. He gave his conclusions as to what the contract was and in a way consistent with his not having heard a word of what passed between James L. Gates and respondent. His direct examination closed without his claiming to have been present at such time. However, near the close of his cross-examination he said, in effect, that the contract was closed at appellant's office in Milwaukee, and that he, James L. Gates, Jungblut, and respondent were present. However, he failed to state definitely as to himself and Jungblut, more than that they were in or about the office. He did not state that they heard what passed between James L. Gates and respondent, or that they took part in the conversation as to the contract. James L. Gates, as before indicated, testified, in effect, that the conversation was wholly between himself and respondent. On the whole it seems that the referee and the trial court gave to the testimony of James L. Gates and to that of his son and Jungblut, all the consideration the same was entitled to.

We cannot hold that the evidence produced by appellant clearly preponderates over that of respondent, strongly corroborated as it is, as before indicated. The evidentiary effect of the delay of eighteen months in objecting to respondent's view of the contract, while encouraging him to continue in the execution thereof, is to admit the correctness of such view; in connection with action by him it is conclusive, estopping appellant from changing its attitude to his prejudice. It is elementary that silence of one person to a transaction by him with another, when he, acting in the ordinary way, would deny the claim of such other as to the character of such trans-

action, constitutes circumstantial evidence in favor of such other as to such character upon its subsequently being called in question between the parties. *Hinton v. Wells,* 45 Wis. 268; *Murphey v. Gates,* 81 Wis. 370, 51 N. W. 573. And such silence, naturally calculated to cause such other to occupy a position which he otherwise would not, upon his acting in the matter so that he would be prejudiced if such person were permitted to change his attitude with effect, becomes conclusive evidence of what such silence suggests, estopping such person from asserting that which, if asserted in the first instance, would or might have deterred such other from advancing to where retreat would be prejudicial to him. *Mygatt v. Tarbell,* 85 Wis. 457, 55 N. W. 1031; *Wheeler & W. Mfg. Co. v. Monahan,* 63 Wis. 198, 23 N. W. 109; *Budge v. Mott,* 47 Wis. 611, 3 N. W. 381; *Smith v. Armstrong,* 24 Wis. 446. On the whole case we can see no good ground for disturbing the judgment appealed from.

*By the Court.*—The judgment is affirmed.