## Wytheville.

### NORFOLK HOSIERY AND UNDERWEAR MILLS COMPANY V. WESTHEIMER.

#### June 14, 1917.

#### Absent, Burks, J.*

1. MASTER AND SERVANT—*Holding Over—Terms of Employment.*— In case of a contract of employment by the year, to be performed within the year, arising from a holding over and a continuance of a preceding employment by the year, without any notice either from employer to employee, or from the latter to the former, before the beginning of the new employment, of any proposed change in the terms of the preceding employment, the new contract of employment is implied in law to be on the same terms as the preceding employment.

2. MASTER AND SERVANT—*Holding Over—Terms of Employment.*— In such a case, the servant having furnished a valuable consideration to bind such new contract of employment by entering upon the performance thereof, the master could not thereafter change any of the terms without the assent of the servant, that is, without a meeting of the minds of the servant and master on a different contract.

3. APPEAL AND ERROR—*Conclusiveness of Verdict—Conflicting Evidence.*—Where the jury has decided a question of fact upon conflicting evidence, their verdict is conclusive.

4. RECEIPT—*"In Full."*—Where a servant had endorsed and used a check of his master, containing the entry on its face "in full to July 1, 1915," this constitutes *prima facie* evidence that such payment was in full of the servant's salary to July 1, 1915. But it was *prima facie* evidence only of such fact. The servant was at liberty, notwithstanding his acceptance and use of such check, to prove the correct status of the account between him and his master. The acceptance and use of such check merely placed the burden of proof upon the servant.

5. ESTOPPEL—*Master and Servant—Acceptance by Servant of Remittance Statements.*—The acceptance by a servant of payments made him by his master, accompanied by the statements of account contained in remittance statements, does.

---

*Case submitted before Judge Burks took his seat.

not estop him from drawing a larger salary per month than that shown to be due him by the remittance statements, unless the master was misled thereby to its prejudice, in that it was thus led to continue the employment of plaintiff beyond the term it was legally bound to continue it.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk, in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

STATEMENT OF FACTS BY SIMS, J.

The defendant in error, plaintiff in the court below, who will be hereinafter referred to as "plaintiff", was for ten or eleven years in the employment of the plaintiff in error, defendant in the court below, who will be hereinafter referred to as "defendant", as a travelling salesman. The employment during all this time was by the year, from January 1st to December 31st inclusive. For the year next preceding January 1, 1915, the guaranteed salary of the plaintiff was $200.00 per month and expenses, and there was a contingent salary in addition, which was contingent upon 5% of his net sales exceeding such guaranteed salary. The contingent salary in excess of $2,400.00 guaranteed salary per year is immaterial to the case before us.

There is no conflict in the testimony that the same employment of plaintiff was continued for the year January 1, to December 31, 1915, by the year. There is conflict, however, in the testimony with respect to the agreed salary he was to receive. There were two partners of the firm of defendant manufacturers, J. B. Hecht and Morton Hecht. The plaintiff testified that nothing was said to him by J. B. Hecht, on the subject of plaintiff's employment for 1915, prior to March, 1915; that in December, 1914, Morton Hecht, referring to plaintiff's employment for 1915, told him, (to use the words of the latter) "that he was not uneasy about me," (referring to his capacity as a salesman) "that I

should keep on like I had been keeping on * * * no matter what the conditions should be * * * and I thought it was settled;" that this was all that passed between the plaintiff and the defendant prior to 1915 on the subject of the employment by the latter for the year 1915; and that plaintiff accordingly continued his said work for defendant for the year 1915.

As we must consider the testimony as if upon demurrer to the evidence by defendant, we must regard the fact as being that the plaintiff continued in the employment of the defendant for the year 1915 under an implied contract upon the same terms as to salary as fixed by the employment for the year 1914.

The defendant, however, further claims that the plaintiff in March, 1915, consented to a change in the amount of his guaranteed salary from $200.00 per month to $150.00 per month for the remainder of the year 1915, namely from March 1 to December 31, 1915. There is a direct conflict in the evidence as to this. Plaintiff positively denies such consent in his testimony. The testimony for defendant is equally positive that such consent was given by plaintiff. As the testimony has to be considered by us we must regard the fact to be that the plaintiff did not give such consent.

The remaining material facts in the case are that as a rule the plaintiff did not in prior years or during the year 1915 draw his guaranteed salary each month, but from time to time as he chose, he would request payments to be made him, which were always made per his request, and that he had never overdrawn such salary. That $1,700.00 was paid plaintiff in 1915 evidenced by checks of defendant for following amounts and of the following dates: 1915, February 25th, $200.00; March 10th, $200.00; June 28th, $200.00; June 28th, $200.00, (two checks same date); July 9th, $200.00; August 20th, $200.00; November 18th, $500.00, leaving $700.00 balance unpaid of the $2,400.00 guaranteed salary aforesaid. All of these checks were payable to plaintiff except one, namely, one of those dated June 28th, which

was payable to "cash." This was done because plaintiff was then sick in a hospital and Morton Hecht in person took the cash therefor to the plaintiff on June 30th, and handed him same and the other check for $200.00 of date June 28th, making $400.00 paid plaintiff June 30th, evidenced by said two checks of June 28th.

The check of date July 9th contained this entry on the face of it "in full to July 1, 1915." It was in full of plaintiff's guaranteed salary if that was only at the rate of $150.00 per month from and after March 1, 1915, but lacked $200.00 of being in full of it, if it was at the rate of $200.00 per month from and after March 1, 1915.

This was the only check in or on which appeared any entry as to the status of the account between plaintiff and defendant.

However, remittance statements were sent by mail or handed by defendant to plaintiff, with every check, except perhaps that payable to "cash." There are only three of such statements in the record, concerning the salary after March 1, 1915, dated respectively July 9, August 20 and November 18, 1915. The material portions of these statements are as follows:

*July 9th Statement.*
    "Salary a/c of June to July 1st...............$200.00"
    "No receipt required. File this for reference."
        (This, it will be observed, accords with plaintiff's claim as to amount of salary per month, but was in fact the salary for May, to be in accord with plaintiff's claim, and not for June; and was in full of salary to July 1st, in accordance with the claim of defendant, as stated on face of the check aforesaid of this date.)

*August 20th Statement.*

"Salary a/c—July ...........................$150.00

August ...........................   50.00

$200.00"

"No receipt required. File this for reference."

*November 18th Statement.*

"Bal. on salary in full to November 1, 1915.....$400.00

"$100.00 on November salary ................ 100.00

$500.00"

"No receipt required. File this for reference."

Plaintiff testified that he did not notice the entry aforesaid on the face of the July 9th check and that he never noticed or paid any attention to any remittance statement sent or handed him with checks for his guaranteed salary.

On December 31, 1915, defendant rendered plaintiff a statement showing $200.00 balance due him according to defendant's position as to the salary of plaintiff from and after March 1, 1915, which was correct according to that position. Plaintiff claimed that $700.00 was the balance due him, which was correct according to his said position on the subject, declined to accept the $200.00 balance and instituted this suit. The suit resulted in a verdict in the court below for $700.00 in favor of plaintiff. Thereupon the defendant moved the court to set aside such verdict as contrary to the law and the evidence and grant it a new trial, which motion the court overruled and entered judgment against defendant in accordance with said verdict for $700.00 and costs. This action of the court is before us for review.

*Loyal, Taylor & White*, for the plaintiff in error.

*S. M. Brandt*, for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the opinion of the court .

1. This is a case of a contract of employment by the year, to be performed within the year. It being a holding over and a continuance of a preceding employment by the year, without any notice either from employer to employee, or from the latter to the former, before the beginning of the new employment, of any proposed change in the terms of the preceding employment, the contract of such new employment is implied in law to have been of the same terms as those of the preceding employment—that is to say, the amount of the guaranteed salary of plaintiff for the year 1915 was $2,400.00 (*Conrad* v. *Ellison-Harvey Co.*, 120 Va. 458, 91 S. E. 763).

The plaintiff having furnished a valuable consideration to bind such new contract of employment by entering upon the performance thereof, the defendant could not thereafter change any of said terms without the assent of the plaintiff, that is, without a meeting of the minds of the plaintiff and defendant on a different contract. Whether there was such assent and different later contract the jury have decided in the negative on conflicting evidence, as above stated, and their verdict under the well settled rule on the subject is conclusive upon us.

2. As to the effect of the endorsement and use by plaintiff of the check of July 9, 1915, containing the entry on its, face "in full to July 1, 1915," which is urged as barring the plaintiff's right of recovery.

This was *prima facie* evidence that such payment was in full of plaintiff's salary to July 1, 1915.

But it was *prima facie* evidence only of such fact. Plaintiff was at liberty, notwithstanding his acceptance and use of such check, to prove the correct status of the account between him and the defendant. The acceptance and use of such check merely placed this burden of proof upon the

plaintiff. He has sustained such burden in the instant case by his testimony showing what the contract of employment of him by defendant was for the year 1915, and how much it in fact paid him thereon; which testimony the jury have accepted as true, and which showed that the entry, "in full to July 1, 1915," on said check was incorrect.

3. Another position urged by counsel for defendant is that the acceptance by the plaintiff of the payments made him accompanied by the statements of account contained in the remittance statements, gave to these statements the effect of making them *prima facie* evidence of their correctness; and a number of cases of *employment by the month,* where the employee signed receipt in full for the monthly salary, are cited as sustaining such position.

It is unnecessary for us to consider whether this position is well taken, for the reason that, if the acceptance of the payments made him were considered as making the said statements *prima facie* evidence of their correctness, the testimony of the plaintiff was ample to rebut and overturn such *prima facie* case; and the credibility of such testimony was for the jury.

4. The remaining position urged in bar of the plaintiff's recovery is, that he is estopped from drawing a larger salary per month than that shown to be due him by said remittance statements, by his acceptance of the payments made him accompanied by such statements.

This position could be maintained only in the event that the defendant was misled thereby to its prejudice, in that it was thus led to continue the employment of plaintiff beyond the term it was legally bound to continue it.

We have seen that this was not true in the case at bar, hence this position is untenable.

The following cases are relied on as sustaining such position.

*Philadelphia & B. C. R. Co.* v. *United States,* 103 U. S. 703, 26 L. Ed. 454. In that case a railroad company con-

tracted to carry the mails over a route which included another railroad, and the latter road performed part of the service, and brought an action against the Government for such service: *Held:* That having stood by contentedly and seen the money, which it now claims, paid to the other company and received and receipted for the money paid it on that foundation, it would be inequitable to permit it now to recover and thus make the Government pay twice."

Clearly a very different case from that at bar.

In *Moller* v. *J. L. Gates Land Co.,* 119 Wis. 548, 97 N. W. 174, there had never been an employment by the year, but for an *indeterminate period.* The employee rendered statements from time to time during his employment in all respects in accordance with his theory that under the contract he was entitled to a salary of $100.00 per month and expenses, and the employer for eighteen months failed to object to the employee's view of the contract, "while encouraging him to continue in the performance of his duties under it." *Held:* The employer was estopped from changing his attitude on the contract to the employee's prejudice.

In the case last cited the period of employment was uncertain. In the case at bar the period was certain. The distinction between the cases is manifest.

In *Taylor* v. *Butters, etc., Co.,* 103 Mich. 1, 61 N. W. 5, there was a sale of slabs, edgings, etc., trimmed from lumber cut at plaintiff's mill at a specified price per cord—the contract not specifying the length of the material, but that it was to be piled in condition for measurement on scows alongside defendant's mill dock and then measured. The defendant was to pay monthly for the material received; that *both parties* measured it; and that defendant sent statements monthly of the measurements and a check for the amount thereby shown to be due (per syllabus). *Held:* "That the court properly charged that if plaintiff received such statements and checks without objection and remained

silent for any considerable time, he would be estopped from afterwards questioning the measurements, in the absence of fraud and mutual mistake."

This decision rests on the principle that the parties were bound by a mutual adjustment of matters of account between them and that there was an account stated between them embodying such result—an accord and satisfaction—and has no bearing upon the case at bar.

For the foregoing reasons we find no error in the judgment complained of and it will be affirmed.

*Affirmed.*