HOBERG, Respondent, vs. McNEVINS and another, Appellants.    [Six Cases.]

*May 28—June 25, 1919.*

*Specific performance: Corporations: Sale of stock: Consideration: Option to repurchase: Waiver of objection: Offer to resell stock: Statute of frauds: Contract to retransfer stock: Uncertainty: Parol evidence: Transactions at stockholders' meetings: Power of court to decree specific performance: Transfer by contracting parties: Separate bills of costs: Actions not consolidated.*

1. Where a corporation purchased its own stock in consideration of the cancellation of the indebtedness of the sellers, such stock being later distributed as a stock dividend pursuant to an agreement between the corporation and the stockholders receiving the dividend, and certain of the stockholders signed an agreement to retransfer said stock to the original owners within three years for the price paid therefor, all who signed the agreement were bound thereby when all signed who it was understood were to sign.

Hoberg v. McNevins, 169 Wis. 486.

2. The objections that there was no legal acceptance of the option to repurchase and that there was a failure in the description of the shares must be deemed to have been waived by the silence of the stockholders as to such points when demands were made upon them for retransfers of the stock and by their assertion of and their apparent reliance upon other grounds for refusal.

3. The agreement was not void under the statute of frauds for uncertainty, as failing to specify the exact number of shares demanded from each of the purchasing stockholders.

4. Where certain of the stockholders who had participated in the stock dividend agreed to retransfer the stock so received within three years at a stated price, but reserved the right to sell to others, such reservation did not nullify the right of the original owners to repurchase in the absence of the exercise of the right reserved.

5. Where the purchase of its stock by a corporation, the cancellation of the stockholders' indebtedness to the corporation, and the agreement that the sellers were to ·have, for three years, the option of repurchasing the stock at the price paid, were all parts of the same transaction, there was ample consideration to support the promise on the part of other stockholders, to whom the purchased stock was issued by the corporation, to keep the resale offer alive for three years.

6. The rights of the parties to the transaction having been established by what took place at a stockholders' meeting and not being dependent on the written contract, which, as made and partly performed, was taken out of the statute of frauds, evidence as to the oral transactions at the meeting was not inadmissible as tending to vary, affect, or change a written contract.

7. The transfer by certain of the defendants to their spouses of the stock received by them did not put it beyond the power of the court to decree specific performance of their agreement to retransfer to the stockholders who sold.

8. In separate actions for specific performance of the written agreement, the allowance by the court of separate bills of costs was not erroneous, there having been no consolidation and each action being of such a nature as not to permit the joinder of any of the defendants in the other actions and the rights of the plaintiffs being several and not joint. Nor does the situation come within the provisions of sec. 2919, Stats.

APPEAL from six several judgments of the circuit court for Brown county: W. B. QUINLAN, Judge. *Affirmed.*

*John J. Hoberg* and *Maud Hoberg,* his wife, for some time prior to January 13, 1915, were indebted to the John Hoberg Company, a corporation, for about $22,700, and certain shares of stock owned by them in such corporation were held by it as collateral security.

The John Hoberg Company was organized with a capital stock of $45,000 and had, at the time of the transactions in question, assets worth many times the face of its capital stock. All of its stock was held by the family of John Hoberg, the original founder of the business, and one Henry Goethe, the secretary of the company.

At the annual meeting of the company on January 13, 1915, which was attended by all the stockholders and the persons interested herein, a resolution was duly made and carried to offer to *John J. Hoberg* and *Maud Hoberg,* his wife, $128 per share for so many of the shares of the capital stock held by them respectively as would be sufficient at that rate to meet and cancel their indebtedness to the company. At the same meeting and by unanimous consent the stock so purchased by the company in cancellation of such indebtedness was distributed among all the stockholders of said company substantially in the proportions in which they held stock in the company.

Pursuant to a discussion had at the same meeting a written agreement was drawn and dated January 16th, reading as follows:

"We, the undersigned, having each of us bought a certain amount of shares of the John Hoberg Company's capital stock from *John J. Hoberg* and his wife, *Maud Hoberg.* We agree to resell to them within (3) years from date hereof these shares as each of us bought, for the same amount per share as we paid them per share, provided these such shares are not sold by us to another party during these three years time.       ."ANTON HOBERG.
"HENRY GOETHE.
"FRANK H. HOBERG.
"WM. HOBERG.
"ROSE McNEVINS."

This was signed by all of the stockholders save the widow of the senior Hoberg and by one of the sisters-in-law. In May or June, 1917, a demand was made by *Maud* and *John J. Hoberg* respectively upon each of the signers of said writing for a retransfer of such shares and a tender made to them respectively of the amounts according to the purchase price fixed at the meeting of January 13, 1915. Certain of the signers complied with such request. The several defendants herein having refused so to do, separate actions were brought by *John J. Hoberg* and *Maud Hoberg* against each of such defendants to have such stock retransferred to them.

By stipulation the six separate actions were tried together, but separate findings and judgment made in each.

The court made findings as to the facts substantially as above recited and also to the effect that the alleged transfers by certain of the defendants of such stock so received by them on account of the transaction of January 13, 1915, to their respective spouses were shams, without consideration, and for the intent, concurred in by the persons taking part therein, to defeat said plaintiffs' respective rights to repurchase, and that such alleged transfers have never been made on the books of the company.

As conclusions of law the court found that there was a valid contract for the retransfer of the several amounts of stock and that the respective plaintiffs were entitled to specific performance thereof upon their respective tenders of the amounts; that the pretended transfers of stock by certain of the defendants to their respective spouses were void, and that the respective plaintiffs were in each of the cases entitled to a judgment requiring a retransfer and delivery of such stock upon payment; and that each was entitled to dividends that had been paid upon such stock between June 1, 1917, and the entry of judgment; together with costs and disbursements.

From the respective judgments entered in accordance with such findings the defendants have appealed. The six sev-

eral appeals were heard as one, with the understanding that the disposition to be made of the one should control as to all.

For the appellants there was a brief by *Martin, Martin & Martin,* and oral argument by *Gerald F. Clifford* and *Joseph F. Martin,* all of Green Bay.

For the respondent there was a brief by *John A. Kittell* and *Greene, Fairchild, North, Parker & McGillan,* and oral argument by *Mr. J. R. North* and *Mr. Kittell,* all of Green Bay.

ESCHWEILER, J.    The objections to the judgments entered by the court below are substantially as follows: (1) That the written agreement set forth above, dated January 16, 1915, was not a valid and binding agreement because the defendants were not to be bound by such writing until and unless it were so signed by all of the stockholders participating in the meeting of January 13, 1915, and that two of such stockholders did not sign; (2) that there was no legal acceptance of the writing of January 16th, if such were an option; (3) that such writing is void under the statute of frauds for uncertainty; (4) that it is null and void on the theory that, there being a reservation of the right to sell to third persons, there can be no exclusive right to purchase given; (5) that there was no consideration for the promise to keep the offer open for three years, and that it could be and was revoked; (6) that oral testimony was improperly admitted as to the transactions at the meeting of January 13th so far as such tended to affect or change the writing of January 16th; and (7) that such of the defendants as had transferred or delivered their respective certificates of stock to their respective spouses had the right so to do as against the plaintiffs and that the court should not have disregarded such transactions; and further (8) that the court erred in allowing separate bills of costs in each of said six actions.

The court found and the evidence supports the finding that at the meeting of January 13th, where the matter was

discussed respecting the cancellation of the indebtedness of *John J. Hoberg* and *Maud Hoberg* to John Hoberg Company, it was then understood by all present that two of the then present stockholders, though consenting to the purchase by the company of the stock and its distribution among the respective stockholders, did not and would not consent to be bound to retransfer such stock they respectively would receive as a result of the transaction. As a result of such finding, which was upon disputed evidence, the defendants were properly held to have become bound when all signed who it was understood were to sign.

The second objection, to the effect that there was wanting in this case a sufficiently legal acceptance of the option to repurchase, is based upon the contention that inasmuch as the writing of January 16th recited that a certain amount of shares of the capital stock of the John Hoberg Company had been bought by each of the signers from *John J. Hoberg* and his wife, *Maud,* while the undisputed fact was that the shares in controversy had been purchased by the corporation and not by the individuals and then distributed or divided by the corporation, that therefore the description in the writing of January 16th did not fit such dividend stock. A further objection is made on the ground that, inasmuch as it appeared that there was a slight discrepancy in the exact number of shares ultimately received by such individual stockholders on the dividend distribution from that which was their respective exact proportionate amount, there was a failure in description. This discrepancy arose from the fact that in the distribution certain stockholders received fractional shares, and by agreement among themselves such fractional shares were bought up by two of the stockholders so that the distribution might be of undivided shares.

Under the undisputed facts and those found by the court where there was any dispute, neither of these objections could well be considered material, and in any event they must be deemed to have been waived by the silence of the de-

fendants as to such points at the time when the demands were made upon them for the retransfers and their assertion of, and apparent reliance upon, other distinct grounds for their refusal to comply with such demands.

The third objection, to the effect that the writing is void under the statute of frauds for uncertainty on the ground that it fails to specify the exact number of shares demanded from each defendant respectively, is not well taken. There was sufficient in the notice itself, together with the surrounding facts and circumstances with knowledge of which the defendants were properly charged, to warrant the court below in making the disposition of this objection that it did. *Inglis v. Fohey,* 136 Wis. 28, 33, 116 N. W. 857.

Fourth, that the reservation of the right to sell was a nullifying of any right of purchase, is not under the facts a valid objection. Before there had been any *bona fide* sale or transfer of the stock demand was made for a retransfer. Therefore the right which they reserved unto themselves of making a sale and disposition of such stock at any time within the three years had not been exercised by them, and was still dormant at the time of the demand. Having failed to exercise the right so reserved by themselves to themselves, they cannot be heard to successfully interpose such unexercised right to defeat the plaintiffs in the exercise of their right given to them by defendants.

The fifth point is in effect that there was no consideration for the promise on the part of the defendants to keep the offer alive for three years, and, there being no consideration, such promise was not enforceable, and in any event could be and was revoked.

If the agreement to sell such stock had been made subsequent to and independent of the purchase by the company of the stock and cancellation of the indebtedness there might be force and merit in this and in several of defendants' contentions. It is found by the court, and the evidence supports such finding, that this was all in effect one transaction; the purchase by the company, the cancellation of the indebted-

Hoberg v. McNevins, 169 Wis. 486.

ness, and the agreement that the plaintiffs were to have the option of obtaining their stock back again. As one indivisible transaction there was ample consideration to support it and all parts thereof.·

What has been said on the preceding propositions disposes of and dismisses the sixth point raised, which is to the effect that it was improper to receive or consider evidence as to the oral transactions at the meeting of January 13th as tending to vary, affect, or change the writing of January 16th. The rights of the parties were established by what took place at the meeting and are not dependent upon the writing itself. The contract then made and partly performed was taken out from the statute of frauds. *Hankwitz v. Barrett,* 143 Wis. 639, 128 N. W. 430. The plaintiffs, therefore, do not need to base their right to recover upon the writing of January 16th. It only served the purpose of additional evidence as to the transaction.

The seventh objection is to the effect that the transfer by certain of the defendants to their respective spouses of the shares of stock in question put it beyond the power of the court to decree specific performance of the agreement to retransfer. What has been said above on the other objections sufficiently indicates the proper disposition to be made of this objection. There was no such *bona fide* sale as was the evident intent of both letter and spirit of the contract there must be.

As to the taxation of costs: there having been no consolidation of the six cases so as to make but one action, and the actions being each of such a nature that it would not permit of the joinder of any of the defendants ·in the other actions therein, and the rights of the plaintiffs being several and not joint, as against the several defendants, there was no error by the court in allowing the separate bills of costs, nor does the situation come within the provisions of sec. 2919, Stats., as contended for by defendants.

*By the Court.*—Judgments affirmed.