MAHONEY, Appellant, vs. KENNEDY and another, Respondents.

*October 19—November 16, 1920.*

*Statute of frauds: Sale of corporate stock: Part performance: Seller surrendering interest and management of corporation to buyer: Evidence: Correspondence after sale.*

1. Under secs. 1751 and 1751n—10, Stats., the capital stock of a corporation is personal property, and a sale thereof comes within the statute of frauds (sec. 2308) unless taken out by part performance.

2. A contract for the sale of the capital stock of a corporation engaged in publishing a newspaper, where no certificates of stock had been issued or printed, was partly performed so as to be taken out of the statute of frauds where the seller, who owned a controlling interest in the corporation, resigned his office, delivered possession to the buyers, and they, by an agent, assumed control and management of the corporation.

3. Correspondence between the parties after the contract was alleged to have been made and before action was commenced, stating the claims of the parties as to the existence of the contract and its contents, is admissible as tending to show the claims or admissions by silence or failure of denial of the parties.

APPEAL from a judgment of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge. *Reversed.*

Action to recover $7,000, the purchase price of plaintiff's interest in the Janesville News Publishing Company, alleged to have been sold to defendants under an oral contract claimed to have been sufficiently performed to take it out of the statute of frauds. The defendants put in separate answers denying making the contract. At the close of plaintiff's evidence the court granted a motion for a nonsuit and entered judgment accordingly, on the ground that if the contract was made as claimed by plaintiff it was void under the statute of frauds because there had been no sufficient performance of it to lift the ban of the statute. Plaintiff appealed.

For the appellant there was a brief by *Edward H. Ryan* of Janesville, attorney, and *Grady & Farnsworth* of Portage, of counsel; and the cause was argued orally by *Daniel H. Grady.*

For the respondents there was a brief by *George G. Sutherland,* attorney, and *Charles E. Pierce,* of counsel, both of Janesville; and the cause was argued orally by *Mr. Pierce.*

VINJE, J. Plaintiff's evidence tended to show these facts: That on November 20, 1919, the plaintiff, who was then owner of a controlling interest in the Janesville News

Publishing Company, a corporation whose certificates of stock had not been issued or even printed, by an oral agreement with the defendants sold his interest to them for the sum of $7,000 to be paid within two weeks.  No writing was signed and no money was paid at the time.  Plaintiff had been general manager of the Janesville News, the paper published by the corporation, up to this time, and had checked against the corporation's account in the First National Bank of Janesville.  His assistant manager, J. E. Jones, had been in active charge of the office, and it appears that the relations between him and plaintiff were not harmonious and that to restore harmony defendants bought out plaintiff's interest.  Both of them were interested in the corporation before, but did not have a controlling interest. The evidence further shows that plaintiff wrote to the First National Bank and canceled his checking right against the funds of the corporation, telling the bank that hereafter the defendants would control such right; that thereafter Jones did the checking until about February 15, 1920, when defendant *Burns* was elected treasurer and began to check in behalf of the corporation.  Plaintiff had also been secretary and treasurer and these offices he resigned or relinquished.  He did nothing in the conduct of the paper or corporation after November 20, 1919, except to write a letter to the defendants advising them as to the policy he thought the paper should still pursue as to some questions of public interest.

Jones testified that on November 20, 1919, he had a talk with defendants at about 9 o'clock in the evening and that "they stated that there would be no further trouble with *Mahoney;* that they had bought him out; witness said he was glad of it; they said they had paid him $7,000 and that witness would have no further trouble with *Mahoney,* and that witness should go on and run the paper for the best interest of the News."  It appears that Jones remained in charge and ran the paper after that.  Both of the defend-

ants were business men and neither of them had any in-
tention to personally manage the paper. It also appeared
that defendants had some negotiations looking to a sale of
the job department of the company.

In view of the provisions of sec. 1751, Stats., providing
that "The capital stock of every corporation, divided into
shares, shall be deemed personal property," and of sec.
1751n—10, providing that "An attempted transfer of title
to a certificate or to the shares represented thereby without
delivery of the certificate shall have the effect of a promise
to transfer and the obligation, if any, imposed by such
promise shall be determined by the law governing the forma-
tion and performance of contracts," it is clear that the
alleged contract in question was one for the sale of personal
property and so comes within the statute of frauds (sec.
2308, Stats.), unless taken out by part performance. The
evidence, if true, would show that in performance of the
contract the plaintiff ceased to act as secretary, treasurer,
and general manager, notified the bank and defendants that
his checking right was transferred to them, and that he took
no further part in the management of the company. It
would likewise show that defendants made J. E. Jones
general manager in place of plaintiff and suffered him to
check against the corporate funds in the bank; that they
attempted to sell some of the corporate assets; and that they
with Jones controlled the company thereafter.

In view of the nature of the subject matter sold it is
difficult to see what more could have been done to perform
the contract. The certificates of stock were not printed
so could not be delivered. Possession of the thing sold was
taken by the defendants through Jones, which was mutually
consented to by both parties. That is a sufficient delivery
and acceptance in law. 25 Ruling Case Law, 620 *et seq.*
The nature of the subject matter of the sale in this case
did not permit of a manual delivery, but delivery so far as
possible was made by plaintiff stepping out and the defend-

ants stepping in. This constituted delivery and acceptance. 20 Cyc. 247; 25 Ruling Case Law, 620 *et seq.; Cotterill v. Stevens,* 10 Wis. 422; *Hankwitz v. Barrett,* 143 Wis. 639; 128 N. W. 430; *Hoberg v. McNevins,* 169 Wis. 486, 173 N. W. 221; *Wilson v. Hotchkiss,* 171 Cal. 617, 154 Pac. 1, L. R. A. 1916F, 389, and note on p. 393. The possession of Jones was the possession of defendants if his testimony is true. We therefore reach the conclusion that the circuit court erred in holding that there was no part performance shown sufficient to take the case out of the statute.

Letters passing between the parties after the contract is alleged to have been made and prior to the commencement of the action stating the claims of the parties as to the existence of the contract and its contents should have been received in evidence as tending to show the claims or admissions by silence or failure of denial of the parties. *Kimball v. Post,* 44 Wis. 471; *Hinton v. Wells,* 45 Wis. 268; *Murphey v. Gates,* 81 Wis. 370, 51 N. W. 573; *Moller v. J. L. Gates L. Co.* 119 Wis. 548, 97 N. W. 174.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings according to law.