GUTKNECHT, Respondent, vs. C. A. LAWTON COMPANY, Appellant.

*March 7—June 6, 1939.*

414

For the appellant there were briefs by *Alk, Kresky & Cohen* of Green Bay, attorneys, and *Morris Karon* of Milwaukee of counsel, and oral argument by *Mr. Karon* and *Mr. Isadore G. Alk.*

For the respondent there was a brief by *Smith & Smith* of De Pere and *Robert A. Kaftan* of Green Bay, and oral argument by *Mr. Kaftan* and *Mr. Herbert J. Smith.*

The following opinion was filed April 11, 1939:

FAIRCHILD, J.  The only substantial question in this case is whether there was a modification of a salary agreement existing between the parties and referred to in a written contract which they entered into in 1927.  The purpose of the written contract was not to fix the plaintiff's salary, but was to make it possible for him to purchase fifty shares of the common stock of C. A. Lawton Company, to be paid for in ten yearly payments.  Gutknecht agreed to give his note for $5,000, and the company agreed to pay him $500 each year to be credited on this note.  This $500 was designated as salary, but was in effect a bonus, since the contract provided that it was to be in addition to the salary which Gutknecht was then receiving under the previous arrangement.

It is conceded that the employment of Gutknecht could be terminated at will.  Both parties to this action so testified, and the contract provided that if Gutknecht should leave the employ of the company before the expiration of the ten-year term, C. A. Lawton Company would take back any shares of stock which he had not yet paid for.  It is contended by Gutknecht that the reference to his then salary was a promise to continue paying that amount monthly, that this promise was an essential part of the written contract, and that no part

of the contract could be modified by parol, (1) because it was under seal and could not be modified by an agreement of lesser dignity, and (2) because it was required to be in writing under the statute of frauds.

Assuming for the moment that the salary reference was in effect a promise to pay Gutknecht the salary he was then receiving, that promise or agreement was subject to oral modification in spite of the fact that the company placed its seal upon the written contract. While the old common-law rule seems to have been that a contract under seal could not be modified or rescinded by a writing not under seal or by oral agreement (6 Williston, Contracts, p. 5186, § 1834), that rule has lost favor. The weight of authority at the present time is that regardless of whether a prior contract is oral or is in a sealed or unsealed writing, it may be rescinded or modified orally unless the original agreement was within the statute of frauds. Restatement, Contracts, p. 768, § 407. It has been held in this state that a sealed contract may be altered by a subsequent parol agreement so far as the latter has been acted upon by the parties. *Marsh v. Bellew* (1878), 45 Wis. 36. See *Telford v. Frost* (1890), 76 Wis. 172, 44 N. W. 835, and *Maxon v. Gates* (1901), 112 Wis. 196, 201, 88 N. W. 54.

The other contention of the plaintiff on the question whether the salary agreement could be modified is that there could be no oral modification because that agreement, by reason of the reference in the written contract, became an essential part of a contract required to be in writing under sec. 121.04, Stats. That section provides that a contract to sell any choses in action of the value of fifty dollars or upwards shall not be enforceable unless the buyer shall receive and accept part of the choses in action so contracted to be sold, or unless some note or memorandum in writing of the contract be signed by the party to be charged. Since the arrangements for repurchase of the stock were clearly within the statute and could not have been enforced by either party

against the other without relying upon a written memorandum, to that extent the contract was subject to the rules which forbid oral modification. It does not follow, however, that a reference to an existing salary agreement in the written contract gives to that agreement the sanctity which attached to the repurchase agreement. While an examination of the cases will show that the rule against oral modification applies to all of the essential terms of a contract required to be in writing (*Hanson v. Gunderson* (1897), 95 Wis. 613, 615, 70 N. W. 827; *Saveland v. Western Wisconsin R. Co.* (1903) 118 Wis. 267, 272, 95 N. W. 130; *Schaap v. Wolf* (1921), 173 Wis. 351, 354, 181 N. W. 214; *Gether v. R. Connor Co.* (1928) 196 Wis. 25, 27, 219 N. W. 373), no case has been found which holds that a collateral agreement referred to in a contract required to be in writing must be regarded as an essential element of such contract, or that it is within the statute.

The contract which the parties entered into in writing in 1927 was not an employment contract. At most the reference to Gutknecht's regular salary was but a memorandum of the salary presently paid, in no way creating an obligation on either party to continue the employment at that salary beyond a month of time. The contract is so drawn as to exclude the idea of entering into a salary agreement for any definite period. Because the reference to an existing contract of employment was not made as an inducement to the purchase and repurchase agreements, that contract retained its independent character. The reference was merely descriptive of the bonus to be paid in addition to regular salary. The mere fact that it was included in the writing together with the stock-purchase agreement does not, therefore, prevent its modification by parol. It is well settled that if a contract is in writing, but is not required by law to be in writing, or to be proved by a writing, it may be modified by a subsequent oral agreement. 4 Page, Contracts, p. 4384, § 2489.

Having determined that the agreement of the parties with respect to the regular salary of Gutknecht could be modified by parol, we turn to the defendant's contention that it was in fact modified. The plaintiff asserts that the only modification which occurred was that he agreed to draw only half of his salary each month and to lend the other half to the company. The burden was upon the defendant to prove that the real effect of the modification was to reduce the salary of Gutknecht. The defendant insists that under the evidence no jury issue existed, and that it was error for the trial court to refuse to direct a verdict in its favor.

It appears by the plaintiff's own admissions that at the time of the conversation now in question he knew that the demand for C. A. Lawton Company products had fallen off; that he himself was bringing in less business than formerly; that the company had operated at a loss; that a number of men had been laid off and that others were working shorter hours; that there had been salary reductions; and that the company had the right to change his monthly salary or to terminate his employment. Gutknecht's account of the conversation was as follows: "He asked me if I would work a while and only draw out half of my salary, and I answered, I think I can, and Mr. Lawton went back in the office and I went on my trip."

Gutknecht did not testify that Lawton asked him to lend the rest of his salary to the company. He contends, however, that if he was to draw only half, that was the same as lending half to the company. It may be that some ambiguity exists because of the words employed in the conversation, but if the parties did not make their agreement perfectly clear by the language which they used in 1931, they did make it clear by their subsequent acts, which are consistent only with a salary reduction.

It appears from the testimony of Gutknecht that in October, 1931, he began to receive checks for $100. About

three months later he had another conversation with Lawton, but said nothing about back salary. He continued to work full time. From October, 1931, to December, 1936, he never told Lawton or anyone else that he was entitled to a salary of $200 per month, or that any unpaid salary was accumulating, or that he expected to receive interest on the money he now claims he was lending to the company. When he received from the unemployment compensation department of the industrial commission a notice of weekly benefit rate for 1936, in which it was stated that his full-time weekly wage was $23.07, he did not make any complaint to Lawton or to any employee of the company. In December, 1936, he received an extra $25 in his pay envelope, and he then asked Charles Lawton, his immediate superior, what this was for. He was told that it was a raise. Some time later he said to Charles Lawton that it was not a raise since he was entitled to $200 per month under his contract. In March, 1937, when he received another unemployment compensation notice in which his wage was stated to be $28.75, he again made no complaint. With the single exception of the remark which Gutknecht made to Charles Lawton in December, 1936, he remained silent about back pay or interest thereon, and continued to accept the bonus of $500 each year in accordance with the plan for purchase of company stock. He did not claim that this $500 was back salary, or that the company was not living up to the rest of its agreement. It was only after he had received the benefit of the bonus arrangement and after the opportunity to discharge him had passed that he asserted his claim for salary.

The conversation of December, 1936, referred to above, was described by Charles Lawton as follows:

"Mr. Gutknecht hailed me as I went by and told me that he had been working under a contract and was entitled to a salary of $200 a month. He suggested that I take it up with my father. I did so. I saw him a short while after that and told him that my father had cut his salary in 1931 and that

his salary in December, 1936, was $125 a month. I told him, as my father instructed me, that if he wasn't satisfied with the salary he was getting, that under the contract he could leave our employment."

E. W. Lawton testified that a conversation occurred in February, 1933, in which he asked Gutknecht if he could get along with less salary, and Gutknecht said he could not. At that time, Gutknecht said nothing about being entitled to back salary.

Even though Lawton did not tell Gutknecht that his salary would be cut, that was the natural inference when Lawton asked Gutknecht if he could work and only draw half. In view of the subsequent conduct of the parties as disclosed by the admissions of Gutknecht, there can be no doubt that such was their understanding. It must be concluded that the evidence as to the circumstances surrounding the conversation in 1931, together with the undisputed facts as to what occurred thereafter, leaves no jury question as to whether the parties modified their agreement with respect to Gutknecht's regular salary. His continued acceptance of $100 each month when he knew that his employer could discharge him if he saw fit, together with his failure to make any claim for back pay over a period of five years or to enter a specific protest when notified that his salary was fixed at $100 per month, leaves no doubt that he had agreed to a modification of the salary agreement referred to in the written contract. See Restatement, Contracts, p. 301, § 224; *Moller v. J. L. Gates Land Co.* (1903) 119 Wis. 548, 553, 97 N. W. 174; *Connor v. Chippewa Falls* (1938), 228 Wis. 102, 279 N. W. 640.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in the defendant's favor dismissing the complaint.

FRITZ, J., dissents.

A motion for a rehearing was denied, with $25 costs, on June 6, 1939.