8   355<br>13a  260

LINN ET AL. V. BUTLER ET AL.

Where a contract of sale of a mining claim is entered into, whereby an
   interest therein is disposed of on a cash payment, the balance to be
   paid out of the net earnings of the mine, and the parties purchas-
   ing sell a portion of such mine to another company and consoli-
   date the two mines, the balance to be paid out of the net earnings
   at once becomes due and payable.

*Error to District Court of Lake County.*

THE facts are stated in the opinion.

Mr. L. C. ROCKWELL, for plaintiffs in error.

Messrs. DECKER and YONLEY and Mr. HUGH BUTLER,
for defendants in error.

BECK, C. J.   The litigation in this case arises out of
mining transactions.   Plaintiffs in error brought suit in
the court below, against the defendants in error, upon a
contract of sale of an undivided one-fourth interest in
the American mine.   Defendants in error demurred to
the complaint, alleging as ground of demurrer that it did
not state facts sufficient to constitute a cause of action.
The demurrer was sustained, and, the plaintiffs declining
to plead further, final judgment was rendered by the
court, to which ruling and judgment plaintiffs duly ex-
cepted and sued out this writ of error.

We learn from the complaint that William P. Linn,
one of the plaintiffs in error, owned an undivided one-
fourth interest in the American mine, situate in Cali-

fornia mining district, Lake county, this state, which
interest he transferred and sold January 24, 1879, to the
defendants in error, Hugh Butler and Charles W. Wright,
the consideration of the sale being $5,750. The contract
of sale, which is incorporated in the complaint as a part
of it, states the terms and conditions of payment as fol-
lows: $250 cash (the receipt whereof is acknowledged);
$250 in thirty days after date; $250 in sixty days after
date; and the remaining $5,000 to be paid out of the net
proceeds of the property sold. The contract permits the
purchasers to deduct from the proceeds of ore taken from
the mine, on account of the one-fourth interest sold
them, all legitimate mining expenses, together with the
cash instalments, amounting to $750, and the balance is to
be deemed net proceeds. It was draughted in duplicate,
and contains an agreement that it should not be assign-
able, and that the money agreed to be paid should become
due and payable to Linn only. The purchasers were let
into immediate possession, and it is averred that they
waived the stipulation against the assignment of the
contract soon afterwards, and consented to its assign-
ment by Linn to Charles F. Burrill as a security for a
loan of money. Burrill afterwards assigned it to Linn's
co-plaintiff in error, L. C. Rockwell, who now holds it as
collateral security for money previously loaned by him to
Linn.

Plaintiffs in error allege that the purchasers, Butler
and Wright, have disregarded the terms of sale specified
in the contract, and have entered into such sales and
transactions in respect to the property conveyed as to
violate the terms of the sale, and seriously to impair the
security of the purchase money.

The principal stipulations of the contract of sale, as set
out in the complaint, are as follows:

"And it is further agreed, on the part of said second
parties, that they will, at the end of thirty (30) days next
after the date hereof, pay unto said Linn said sum of two

hundred and fifty dollars ($250), and in thirty (30) days next thereafter, a like sum; and that they will also pay unto said Linn the remaining instalment of five thousand dollars ($5,000). It being well understood, however, that said payment of five thousand dollars ($5,000) shall only be due and payable upon the terms and conditions herein; that is to say, that said latter sum shall be due and payable only out of the net proceeds received from the sale of ore taken from said American mine by said second parties; such net proceeds to be the net proceeds aforesaid of the undivided one-fourth interest of said mine,—that being the interest conveyed by said Linn to said second parties.

"And it is hereby further agreed and fully understood that the net proceeds above specified shall be construed, only to mean the money received by said second parties from the sale of ore mined and taken from said mine by them on account of said one-fourth interest, and left remaining in hand after paying all expenses of said mining; as well, also, all moneys advanced by said second parties, or paid out by them for and on account of said undivided one-fourth interest, including the seven hundred and fifty dollars ($750) paid on account of the purchase of said one-fourth interest. And in case of sale by said second parties of said interest, then and in that event said five thousand dollars shall at once become due and payable."

Upon a compliance with the terms of sale the purchasers had an opportunity of taking the entire purchase money out of the premises. True, three cash instalments of $250 each were to be made, regardless of the proceeds of the mine, but provision was made for reimbursing the purchasers for these and other advances and expenditures. Hence, upon a final settlement, the entire consideration of the property sold would be $5,000.

It is evident, from the tenor and effect of the stipula-, tions, that Linn relied for the consummation of the contract of sale upon the mineral value of the property sold,

and likewise upon his knowledge of the honesty and mining experience of the vendees; likewise upon their personal supervision and control of the workings of the American mine, to the extent of the interest conveyed to them by Linn. The condition of the contract, that Linn should await final payment until the same could be realized out of the net proceeds of the property sold, means the net proceeds of the entire interest conveyed, not the net proceeds from a fractional part of that interest.

The complaint avers that the vendees have not paid the said instalment of $5,000, and that they have entered into transactions which have destroyed the security for its payment, and that, although it is now due and payable, they refused to pay the same. The transactions referred to are the sale of one-half the interest so conveyed to them by Linn, to the owners of the Little Sliver mine, and entering into an agreement with said parties to release an adverse claim filed by the owners of the American mine against the application of said parties for a United States patent for the Little Sliver mine, whereby a large portion of the American mine was included in the patent issued to the owners of the Little Sliver. This result was brought about by the release of said adverse claim, and the dismissal of the suits brought in aid thereof by Butler and Wright and the other owners of the American mine, and without the knowledge or consent of plaintiffs in error. One purpose of this agreement was to effect a compromise of the litigation concerning the adverse claim, a dismissal of the suits pending, and consent of the owners of the American mine that a patent might issue to the owners of the Little Sliver location, without objection, for all the territory claimed in their application, whether included within the patented surface ground of the American or not.

We cannot ascertain definitely from this agreement what proportion of the surface ground of the American

was thus covered by the other claim, but find, among the conceded facts therein, the following specification: "And whereas, the territory included within the surface lines of said two mines conflicts as to the major portion thereof." It would seem to be a fair inference from this language that a large portion of the American mine was in this manner voluntarily surrendered by Butler, Wright and the other owners of the American mine to those claiming the same under the name of the Little Sliver. It is alleged in the complaint that the owners of the Little Sliver were assisted by the owners of the American to obtain such a patent, and that the purpose of the latter owners was that both mines might be consolidated into one, and that both might be operated conjointly under one general manager. The complaint alleges that all these agreements were carried into effect by or with the consent of the said Butler and Wright. The adverse claim was withdrawn, the suits dismissed, and a patent permitted to issue as proposed in the agreement. The two mining claims were consolidated into one under a general manager, who was operating the property at the time of bringing this suit. Under the agreement for consolidation the owners of the American mine conveyed to the patentees of the Little Sliver thirty-nine seventy-seconds of that portion of the American mine which lay without the surface lines of the Little Sliver, and also outside the surface lines of the Matchless and the Union Emma mines.

If *the territory included within the surface lines of the American* and Little Sliver *conflicted* as to the major portion thereof, as alleged, the conflicting portion of course went into the patent of the Little Sliver. Then, when thirty-nine seventy-seconds, or more than one-half of the portion without the lines of conflict, was conveyed to the owners of the Little Sliver, it would seem that but little of the title to the American lode proper remained in the former owners of the American, viz.:

Butler, Wright, Webster and Craig. Here, then, was an absolute parting with one-half of the property sold defendants in error, a release to an adverse claimant of another portion, and a consolidation of the two mining claims into one, under a general manager of the whole.

Defendants in error received, in consideration of all these concessions on their part, nine seventy-seconds of the Little Sliver mine.

What, now, is the legal effect of these transactions upon the contract sued on? In our judgment the sale by Butler and Wright of a half interest in the property so conveyed to them is of itself such an impairing of the security as to render the last instalment of purchase money due and payable. If a sale of one-half their interest does not produce this result, then no sale short of the whole interest would produce such a result, which conclusion is opposed to sound principles of construction. The defendants in error have not only parted with a large portion of their interest, but have practically surrendered the management and control with which they were invested by the contract of sale. In addition to these acts they have further impaired the security relied upon by plaintiffs in error by entering into the agreement for consolidation of the two properties mentioned. No such merger of mines was contemplated, and certainly it was not contemplated that Linn should depend for the purchase money upon the net proceeds of a consolidated property or two mines to be operated under a general manager, to be selected by the joint owners of both.

These facts and considerations afford good reason for the complaint that the defendants have voluntarily put themselves in a position whereby it is not only impossible for them to comply strictly with their contract with Linn except by immediate payment in cash, but also impossible for Linn to enforce the contract otherwise than by declaring the $5,000 instalment due and payable. When the subject-matter of the contract entered into between

Linn and the defendants in error is considered; the condition of the title to the American mine at the time the contract was made; the men upon whose management, and the particular mine upon which he relied for full payment of the interest sold,— when these and other facts are stated in the complaint, such as the failure of defendants to pay or even to render accounts of the operations contemplated by the contract of sale, and the inability of the plaintiffs to obtain any information concerning the indebtedness, it is our opinion that a good cause of action is stated. If the facts are otherwise than as stated, the court must be informed of them by an answer.

It seems clear, from an inspection of the contract itself, that the entire course pursued by defendants has been just the reverse of what was contemplated by the parties at the time of its execution.

Assuming the facts stated to be true, the defendants have forfeited their right to pay for the property purchased out of the net proceeds, and the purchase money is due and payable in cash. Judgment reversed and cause remanded for further proceedings.

*Reversed.*