[Civ. No. 2691.   Third Appellate District.—January 22, 1924.]

## JOHN H. BATCHER et al., Appellants, v. E. A. HOEPP-NER et al., Respondents.

[1] JUDGMENTS — SALE OF MINING PROPERTY — ACTION TO RECOVER MONEYS.—In this action to recover certain moneys alleged to be due under a contract relating to the transfer of a mine by plaintiffs to defendant, and which provided for certain payments to be made to plaintiffs out of the net proceeds from mining operations which defendant agreed to carry on, the judgment ordering an accounting for the purpose of determining the actual moneys defendant and cross-complainant (to which defendant transferred the mine), expended in prospecting, developing, and working the mine, and providing that upon the completion of such accounting the property be sold in the manner to be determined and directed by the court and that the proceeds, after payment of expenses, be distributed in a specified manner, is not a final judgment. (On petition for hearing in supreme court, approval withheld.)

[2] CONTRACTS — SALES—PAYMENTS—TIME.—The rule that, where one enters into an agreement for the purchase of property and payment therefor is to be made out of the net proceeds of the operation of the property or of the products thereof, a sale of the properties, or the putting them out of one's power to produce net proceeds, renders the agreement immediately enforceable and the sums covenanted to be paid out of the proceeds due and payable, can have no application where the contract explicitly provides for sale by the vendee and that the amounts to be paid by him are only payable out of the profits received by him from a sale or out of dividends or profits received by him for and on account of his share in the corporation or corporations that may be organized to operate the property, and the property has been transferred to a corporation organized to operate same.

[3] ID.—CROSS-COMPLAINT BY TRANSFEREE—ABSENCE OF PREJUDICE.—Conceding it was irregular to permit the corporation to which defendant had transferred the mining property for the purpose of operating same to file a cross-complaint, in which it admitted it held the property subject to the terms and conditions of the contract pursuant to which the property was transferred by plaintiffs to defendant, such action did not constitute reversible error, where plaintiffs did not show themselves to be in anywise injured thereby.

[4] ID. — TERMINATION OF OPERATIONS — RECOVERY OF MONEYS EXPENDED—PARTIES.—Inasmuch as the obligation or continuing duty to operate the mine, which rested not only on defendant but also

65 Cal. App.—25

on any person claiming under the contract through him, could only be terminated by a decree of court ascertaining and determining the impossibility of profits ever being realized and the legal futility of expending any more money upon properties worthless for mining purposes, and the contract expressly provided that the persons expending money in the operation of the properties covered by the contract should first receive repayment of the moneys so expended, but did not provide for any return of the property to plaintiffs in the event of its unsuccessful operation, the corporation to which defendant had transferred the property for the purpose of operating, and which did operate, same was a necessary party to plaintiffs' action to recover moneys alleged to be due under the contract.

APPEAL from a judgment of the Superior Court of Yuba County. Eugene P. McDaniel, Judge. Affirmed.

The facts are stated in the opinion of the court.

Dozier & Dozier, C. F. Kimball and Dozier, Kimball & Dozier for Appellants.

W. H. Carlin for Respondents.

PLUMMER, J.—Plaintiffs began this action to obtain a judgment against the defendant Hoeppner in the sum of $29,300, with interest thereon at the rate of seven per cent per annum from the twenty-second day of July, 1916. The defendant and cross-complainant had judgment herein and plaintiffs appeal.

It appears from the pleadings in this action that prior to the twenty-second day of January, 1916, the plaintiffs were interested in certain mining properties situated in the county of Yuba, state of California, known as the B. A. Campbell, Reuben Clark, and Ida Ruff properties; that on or about the said twenty-second day of January, 1916, the plaintiff John H. Batcher, for and on behalf of himself and his coplaintiffs, made and entered into an agreement with the defendant E. A. Hocppner concerning said properties, which agreement is in words and figures as follows, to wit:

"This agreement made and entered into this 22nd day of January, 1916, by and between John H. Batcher of the City and County of San Francisco, State of California,

the party of the first part, and E. A. Hoeppner, of the same place, the party of the second part;

"Witnesseth: That for and in consideration of the cancellation by said Hoeppner of said Batcher's note to said Hoeppner of three thousand ($3,000.00) dollars and the payment to said Batcher by said Hoeppner of the sum of Five Thousand ($5,000.00) dollars gold coin, receipt whereof is hereby acknowledged by said Batcher and the promises of said Hoeppner hereinafter contained, said Batcher hereby agrees to transfer to said Hoeppner all of his right, title and interest in and to all property both real and personal situate in Section Twenty-six (26) T. 19 N., R. 6 E., M. D. B. & M., and being the B. A. Campbell, Reuben Clark and Ida Ruff properties, more fully described in that certain deed to said Hoeppner dated the 22nd day of January, 1916, and executed by said Batcher, and said Batcher for the same consideration guarantees the complete transfer to said Hoeppner of all right, title and interest both real and personal of W. S. Graham and B. Hartley in and to the same property described in said deed and as a further consideration of the foregoing transfers, said Hoeppner agrees to assume said Batcher's note to the Nevada City National Bank for the sum of Five Thousand ($5,000.00) dollars, on account of which amount said Hoeppner has already paid said Bank the sum of One Thousand ($1,000.00) dollars; said Hoeppner also agrees to assume payment of said Batcher's obligation to reimburse B. Hartley in the sum of Six Thousand and Three Hundred ($6,300.00) dollars cash advanced by said Hartley and reimburse said Graham to the amount of Six Thousand ($6,000.00) dollars cash advanced by said Graham in the mining enterprise and partnership formerly carried on in connection with said property, said amounts to be paid only out of said Hoeppner's share of the net proceeds to be derived from the operation of said property or sale profits received by said Hoeppner or his share in any corporation which he may cause to be created to carry on such operations, and said Hoeppner further agrees to assume the California Extraction Company Bill and all bills of the mining enterprise contracted during the partnership and operation of said property by said Hoeppner and said Batcher; said Hoeppner further agrees to pay said Batcher the further sum of

seventeen thousand ($17,000.00) dollars, but only out of said net proceeds of operation or sale of said property that said Hoeppner may receive, and any money that may be paid said Batcher and Graham and Hartley out of said net proceeds on account of the amounts herein specified, shall be paid as follows: so that the amount to which said Batcher is entitled shall be first paid in full and then the amounts to which said Graham and said Hartley are entitled shall thereafter be paid *pro rata* to said Hartley and Graham, said Hoeppner being entitled to retain the remaining one-half of said net proceeds for his own use.

"In Witness Whereof the parties hereto have hereunto set their hands the day and year first above written.

                    "E. A. Hoeppner.

                    "John H. Batcher."

It is further alleged in plaintiffs' complaint that the defendant Hoeppner paid to the plaintiff Batcher the sum of $5,000 mentioned in said agreement and also paid and discharged a note given by Batcher to the Nevada City National Bank in the sum of $3,000, and also assumed the indebtedness due from the mining copartnership of the plaintiffs and defendant, E. A. Hoeppner, to the California Extraction Company as provided in said agreement, but that the defendant Hoeppner had not paid to plaintiff Batcher the sum of $17,000 provided for in said agreement or to the plaintiff Hartley the sum of $6,300 specified in said contract, or to the plaintiff Graham the sum of $6,000 as set forth in said contract or any portion of said sums.

It is also alleged in the complaint that said sums were to be paid within a reasonable time from and after the said twenty-second day of January, 1916; that a period of six months after said date was a reasonable time for the payment of said sums and that a reasonable time for the payment thereof has wholly expired. It is further set forth that the defendant has wholly failed and neglected to operate said mining properties or to extract the gold or other minerals therefrom either in his proper person or by a corporation created to carry on said operations, and that the defendant has sold and conveyed said properties to another and thereby put it out of his power to operate said property. It is further alleged that after the execution of said agreement the plaintiff Batcher delivered to the de-

fendant a deed of conveyance transferring all of the right, title, and interest of the plaintiffs in and to the real and personal property mentioned in said contract and conveyed and transferred the same to the defendant Hoeppner named in this action. It is further alleged that on the twenty-second day of July, 1916, under and by virtue of the terms and conditions of the contract hereinbefore set out, there became due and payable to the plaintiff Batcher the sum of $17,000, to the plaintiff Graham the sum of $6,000, and to the plaintiff Hartley the sum of $6,300, with interest thereon at the rate of seven per cent per annum from the said twenty-second day of July, 1916.

The defendant Hoeppner filed an answer admitting the execution of the contract and denying all of the allegations as to his failure to comply with the terms and conditions thereof and setting forth, among other things, that immediately after the execution of the contract referred to, he entered upon said premises, and by himself, and through the corporation created as provided for in said contract, had diligently operated said mining properties, extracted all the valuable ore found therein, and had expended in so doing a sum approximately of $150,000, but had only been able to realize and extract from said properties mineral-bearing ores of the value of $500. After the beginning of the trial of the action and the taking of some testimony therein, on the application of the defendant E. A. Hoeppner and the B. A. C. Company, a corporation, cross-complainant, the court made the following order: "It is hereby ordered that the cross-complaint presented by the said cross-complainants against plaintiffs be filed herein, with leave to plaintiffs to plead to said cross-complaint within fifteen days after service upon them of notice of the filing of said cross-complaint." This cross-complaint sets forth that the B. A. C. Company was incorporated on or about the tenth day of March, 1916, and then sets forth the execution of the contract by Hoeppner and Batcher, as hereinbefore referred to, and then alleges that the said E. A. Hoeppner from the date and on the said tenth day of March caused the B. A. C. Company, a corporation, to be organized for the purpose of operating the properties referred to in said contract. The transfer of the properties from Batcher to Hoeppner is then alleged, as hereinbefore mentioned, and

that after the incorporation of said cross-complainant with the knowledge, consent, and approval of the plaintiff Batcher, said Hoeppner, by deed of grant, bargain, and sale, transferred the fee in all of said properties so received by him to the corporation B. A. C. Company. The amounts of money expended in the operation of said properties is then set forth, and, in addition, the sum of $80,000 is alleged to have been expended for mining machinery and equipment. It is then alleged that the total proceeds derived from the operation of said properties during the course of several years was not to exceed the sum of $500.

The impossibility of ever receiving or realizing any net proceeds out of the operation of said properties is then set forth and the cross-complainants concluded their pleading with a prayer that the amount expended upon said properties be ascertained by the court and the properties sold to pay the same and the balance, if any, applied in payment of the amounts contracted to be paid by the defendant Hoeppner to the plaintiffs herein out of the net proceeds of the operation or sale of said mining properties. After the conclusion of the trial and its submission to the court, the court made and entered its findings and conclusions of law and entered judgment in said action substantially as follows, to wit: The findings are to the effect that the contract, as set forth herein, was entered into by the respective parties; that payment was to be made only out of the net proceeds derived from the operation of said properties or sale thereof; that the transfer of the properties by Hoeppner to the corporation was made for the purpose of operating the properties; that the corporation took, with knowledge of the agreement executed by Batcher and Hoeppner; that the properties had been operated for a number of years; that such operation had demonstrated that it was humanly impossible to ever realize any net proceeds therefrom; that there had been expended in such operation and also in the prospecting of said properties many thousands of dollars, to wit, $62,000 in operating said properties, paying the bills agreed to be paid and over $98,000 in the purchase of materials used in connection with the operation of said properties and over $13,000 on account of certain options relating to the Clark and Ruff properties.

That in making the transfer of the properties referred to by the defendant Hoeppner to the B. A. C. Company, said corporation received the same, subject to the terms and conditions of said contract and assumed and agreed to carry out and perform all of the agreements, covenants and conditions therein contained, to be performed and required to be performed by and on the part of the defendant Hoeppner. Upon these findings the court made and entered the following judgment:

"Now, therefore, by virtue of the law and the findings aforesaid it is by the Court ordered, adjudged and decreed as follows:

"1. That plaintiffs take nothing by their action herein except as and in the manner hereinafter indicated and directed.

"2. That an accounting in this action be forthwith had for the purpose of determining the actual amount of moneys which have been by the defendant E. A. Hoeppner and Cross-Complainant B. A. C. Company, a corporation, expended and actually and necessarily paid out in prospecting, developing, operating, working and preserving the property hereinafter described and referred to and mentioned and referred to in the contract of January 22nd, 1916, in plaintiff's Complaint in this action set forth; that thereupon all of said property be sold in the manner to be by this Court directed and determined at the termination of said accounting and that proceeds of said sale after payment of expenses of sale be applied, first, towards repaying and refunding to said defendant E. A. Hoeppner and said Cross-Complainant B. A. C. Company such an amount of said proceeds as by said accounting they and each of them may be determined entitled to, and the balance of said proceeds then remaining, if any, be applied and paid over next to plaintiff John H. Batcher to the extent of Seventeen Thousand Dollars, or so much thereof as said balance of said proceeds will pay of the same, and the remainder of said proceeds of said sale, if any, shall be paid over next to said plaintiffs W. S. Graham and B. F. Hartley *pro rata,* in the payment to said W. S. Graham of the sum of Six Thousand Dollars, and to said B. F. Hartley Six Thousand Three Hundred Dollars, or so much of said respective sums as said remaining proceeds of said sale will pay of the

same; and the balance of said proceeds of sale, if any, then remaining shall be paid over to said cross-complainant B. A. C. Company.''

Thereafter an accounting was had ascertaining the exact amounts expended by the respondents under and by virtue of the agreement entered into between Hoeppner and Batcher and judgment was entered directing the sale of the properties referred to and application of the proceeds, first in repayment of the amounts expended thereon as was found and ascertained and the remainder, if any, to be applied upon payment of the various sums agreed to be paid the plaintiffs out of the net proceeds of the operation of said mines.

[1] No appeal was taken from the judgment herein set forth but only from the judgment entered after the accounting had been had as therein provided to be taken, and it is insisted on the part of the respondent that such judgment is final in its terms and has become conclusive upon the parties herein as to the matters therein adjudicated.

Upon the question of the finality of the decree adjudicating equitable rights, but reserving settlement of accounts upon the coming in of the report of the master, the authorities seem to be in hopeless conflict. (5 Ann. Cas. 176.)

Respondent relies upon subdivision 1 of section 963 of the Code of Civil Procedure and the cases of *Rossi* v. *Caire,* 174 Cal. 74 [161 Pac. 1161] , *Sharon* v. *Sharon,* 67 Cal. 196 [7 Pac. 456, 8 Pac. 709] , *People* v. *Bank of Mendocino County,* 133 Cal. 107 [65 Pac. 124], and *Zappettini* v. *Buckles,* 167 Cal. 27 [138 Pac. 696].

In *Rossi* v. *Caire, supra,* in an action by a stockholder of a corporation which had forfeited its charter, to enjoin the defendants, the former directors, from carrying on the business of the corporation and to compel them, as trustees thereof, to wind up its affairs, pay its debts and distribute its assets to the stockholders, orders directing the trustee to distribute moneys in their hands, derived from the property of the corporation, and to sell the remaining real and personal property of the corporation at public auction for cash, after giving a prescribed notice, it was held that such orders constituted a final judgment so far as the prop-

erty to be disposed of was concerned and appealable as such.

In *Sharon* v. *Sharon, supra,* it was held that a judgment that is conclusive as to any question is final as to that question.

In the Mendocino case it was stated that the general rule applicable in determining whether a judgment is final or merely interlocutory is, that if anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the judgment is interlocutory only.

In the Zappettini case the court made an order dissolving a partnership, adjudging that the property of the partnership be sold in one parcel and that the receiver appointed to make the sale, after deducting the costs and expenses of sale, pay the remainder of the proceeds into court to abide the further order of the court, adjudging that the proceeds of the sale be paid and applied as follows: "1. To the payment of fees and expenses of the receiver, the same to be fixed and determined by this court. 2. To the payment of the fees and expenses of a referee theretofore appointed the same to be fixed and determined by the court, and 3. To the payment of the debts of said copartnership upon the determination thereof by this court, and that the determination thereof be and is hereby reserved by this court until after the return upon the sale of said property." The court held such a judgment final and in so doing said the partnership was dissolved, all the property was ordered sold, the manner in which the proceeds should be divided was finally adjudicated, including the respective proportions of the two partners in any money remaining after payment of costs of sale, fees of receiver, fees of referee and the debts of the firm. Nothing remained to be done by the court except the mere ascertainment of the amounts due to others than the parties on account of fees for services in the action and debts owing by the parties as partners, and to see that the decree already made was properly executed. In this case it appears that nothing further remained to be done except to carry the judgment into effect.

The last case upon this subject which has come to our attention is that of *Pomper* v. *Superior Court of the County of Los Angeles,* 191 Cal. 494 [216 Pac. 577]. The original

action involved was one to quiet title to certain lands and to recover the rents, issues, and profits thereof. The court made and entered a judgment which was entitled an interlocutory judgment and decree, declaring the legal title vested in Emilia Pomper, expressly reserving for future determination the question of the amount of the rents, issues, and profits to be paid by the respective defendants, etc. The court said:

"While it is true that the so-called interlocutory judgment purported to settle the basic issue involved in the case, it expressly left for future determination the right of the parties with relation to the rents, issues and profits, which was one of the issues raised by the complaint, as the plaintiff prayed for judgment for the value thereof.

"The general rule is that where a decree is made fixing the liability and rights of the parties which refers the case to a master or subordinate tribunal for a judicial purpose, such, for instance, as the statement of an account, upon which a further decree is to be entered, the decree is not final (2 Cal. Juris., secs. 19 and 20, p. 142; *California National Bank* v. *Statler*, 171 U. S. 447 [43 L. Ed. 233, 19 Sup. Ct. Rep. 6, see, also, Rose's U. S. Notes]; *Clement* v. *Duncan*, 191 Cal. 209 [215 Pac. 1025]; *Doudell* v. *Shoo*, 159 Cal. 448, 453 [114 Pac. 579].)"

Measured by these cases, is the judgment entered in this cause in words and figures, as hereinbefore set forth, final? We think not. The first paragraph of this judgment shows that as to the basic rights or claims of the plaintiffs the judgment is not determinative or conclusive of anything specific. This paragraph reads as follows: "That plaintiffs take nothing by their action herein except as and in the manner hereinafter indicated and directed." It will be remembered that the plaintiffs have sued for the recovery of $29,300 and interest thereon at the rate of seven per cent per annum from the twenty-second day of July, 1916, until paid. This paragraph does not determine how much money the plaintiffs are to take or how that money is to be obtained or from what source it is to be derived. The second paragraph of the judgment provides that an accounting be forthwith had for the purpose of determining the actual amount of moneys which the defendants Hoeppner and the corporation has expended and actually paid out in pros-

pecting, developing, operating, working, and preserving the
properties, and that upon the coming in of the account, or
the ascertainment of such amounts, the property be sold in
such manner as might be determined upon by the court,
and that the proceeds of the sale should first be applied
to the payment of such sums as the defendant Hoeppner
and the company may be determined to be entitled to and
further provides as to how the remainder of the money
derived from the sale of the properties shall be distributed.
This paragraph requires a judicial determination of the
amount of money necessarily paid out in prospecting, de-
veloping, and operating the properties covered by the con-
tract.   A considerable sum of money was expended in pros-
pecting, a considerable sum of money was expended in
development work, and a considerable sum of money was
expended in operating the properties.   Whether these sums
of money were necessarily paid out or properly paid out
under and in accordance with the terms and the conditions
of the contract were and are questions calling for judicial
action on the part of the trial court, and the plaintiffs could
take nothing by reason of their action until all such matters
were finally determined, the property sold, and the amount
available for application toward the plaintiffs' claims as-
certained and fixed by the trial court.   It thus appears
that the rights to enforce which the plaintiffs began their
action were not finally determined nor was it ascertained
that they actually had any rights in the properties or to
any of the proceeds thereof.   The trial court did make a
number of findings, all in accordance with the allegations
of the answer filed by the defendant Hoeppner and the
cross-complaint filed by the B. A. C. Company, and as a
conclusion of law therefrom declared as follows: ''That
plaintiffs take nothing by their action herein.''   The judg-
ment entered, however, to which we have referred, does not
follow this conclusion of law, but makes this conclusion
of law dependent upon certain contingencies and also facts
thereafter to be adjudicated and determined, to be followed
by sale of the properties in such manner as the court might
order.   Under these circumstances, we think the principle
of law announced in the Pomper case, *supra,* applicable
and not the cases relied upon by respondents.

The first point relied upon by appellant for reversal which we will consider is the claim that the defendant Hoeppner has sold and transferred the property to another, and has thereby put it out of his power to operate the properties referred to in the agreement or produce any net proceeds therefrom. To sustain this contention appellants rely upon the cases of *Wolf* v. *Marsh,* 54 Cal. 228, *Poirer* v. *Gravel,* 88 Cal. 79 [25 Pac. 962] ; *Bagley* v. *Cohen,* 121 Cal. 604 [53 Pac. 1117], and *Linn* v. *Butler,* 8 Colo. 355 [8 Pac. 588].

In the case of *Wolf* v. *Marsh* the agreement reads: ''For value received, I promise to pay to S. Wolf, or order, four hundred and forty-nine dollars. . . . This note is made with the express understanding that if the coal mines in the Marsh ranch yield no profit to me, then this note is not to be paid, and the obligation herein expressed shall be null and void.'' Some time after the execution of this note the defendant sold and transferred the properties referred to, and the court held that in so doing he voluntarily put it out of his power to comply with his contract and the amount of money mentioned in the note immediately became due and payable.

In the case of *Poirer* v. *Gravel* the contract, after fixing the amount to be paid, concluded in these words: ''The said sum of money to be paid only and exclusively from such products of said land as I may be entitled to, and no other property of mine shall be subject to said debt or obligation.'' After entering into the contract and taking possession of the properties the defendant sold the same and put it out of his power to realize anything therefrom. Upon this state of facts the amount of money agreed to be paid out of the proceeds immediately became due and payable.

In the *Bagley* v. *Cohen* case it was held that where one agrees to pay a certain sum out of the specific business and thereafter sells the business that the money agreed to be paid out of the profits of the business immediately became due and payable.

In the case of *Linn* v. *Butler, supra,* it was agreed that the sum of $5,000 should be payable only out of the net proceeds derived from the sale of ore taken from the mine, but it was also provided that in case of sale by the second parties the $5,000 should become immediately due and pay-

able.  A sale was made and the court, in pursuance of the
terms of the contract, held that the sum agreed to be paid
forthwith became due and payable upon the sale of the
properties.

[2]  It seems to be well settled that where one enters into
an agreement for the purchase of property and payment
therefor is to be made out of the net proceeds of the opera-
tion of the property or of the products thereof that a sale
of the properties, or the putting them out of one's power
to produce any net proceeds, renders the agreement im-
mediately enforceable and the sums covenanted to be paid
out of the proceeds due and payable, unless there is some-
thing further or otherwise in the contract which prevents
the application of the principle enunciated in the fore-
going cases.  Does such principle apply to the contract in
this case?  It is therein provided, after fixing the amount
to be paid, that "said amounts to be paid only out of said
Hoeppner's share of the net proceeds to be derived from
the operation of said property or sale profits received by
said Hoeppner or his share in any corporation which he
may cause to be created to carry on such operations,"
and further, that "said Hoeppner agrees to pay said Batcher
the further sum of $17,000 but only out of said proceeds
of operation or sale of said property that said Hoeppner
may receive," etc.  The contract by its terms contemplates
the creation of a corporation to carry on the operations
of the mining properties conveyed by the plaintiff to
Hoeppner.  It is true that nothing appears in the con-
tract as to the manner in which the corporation to be
organized shall be vested with the power or authority to
enter upon said premises and operate the same, but it is
clearly within the intent, as well as the language of the con-
tract, that a corporation is to be organized, and that the
payments to be made by Hoeppner to the plaintiff herein
are only to be made out of the proceeds of the properties
mentioned therein or profits received by him, or his share
in any corporation which he may cause to be created for
the purpose of carrying on said operations.  The language
of the contract may be again repeated to make this thought
clear.  It reads: "Said amounts to be paid only out of
said Hoeppner's share of the net proceeds to be derived
from the operation of said property or sale profits re-

ceived by said Hoeppner or his share in any corporation
which he may cause to be created to carry on such opera-
tions.'' Even though Hoeppner should have disposed of
the properties mentioned in the agreement absolutely and
without any reference to the contract and under such
circumstances that a court of equity would not be justified
in holding that this grantee took with knowledge of the
contract and subject to its terms and conditions, yet, unless
such transfer were tainted with fraud, the plaintiffs in this
case would not be entitled to succeed unless the testimony
established the fact of Hoeppner having received net
profits available to the payment of their claims either by
sale of the properties or by dividends or other income re-
ceived on account of his share in the corporation or corpora-
tions organized by him to operate the properties.

From this it is apparent that the cases cited by appellants
and other cases having to do with the same questions wherein
it is held that the sale of property out of which payment
of the purchase price is to be made from profits derived
from the operation of the property or the products grown
thereon, have no application whatever to the case at bar
where the contract explicitly provides for sale, and that the
amounts to be paid by Hoeppner are only payable out of
the profits received by him from a sale or out of dividends
or profits received by him for and on account of his share
in the corporation or corporations that may be organized to
operate the properties to such corporations as the properties
mentioned in the contract may be transferred.

The pleadings in this case raise no questions of fraud
or concealment and tender only, so far as the defendant
Hoeppner is concerned, the question of profits received from
sale of the properties, that the transfer made by him as
herein referred to rendered payments, provided for in the
contract, immediately due and payable and, also, that the
operation of the mine might have been such as to have
yielded sufficient profits to pay the several amounts alleged
to be due to the plaintiffs herein. Considerable testimony
was taken by the trial court upon the value of the proper-
ties involved in this action and referred to in the contract
and as to the possibilities of being made to yield profitable
returns. The court, upon conflicting testimony, has made
and entered its findings herein concerning the value or

valuelessness of such properties and also as to the issue of whether said properties have been intelligently and properly operated with the intent and purpose of obtaining a profit therefrom. Considerable testimony was introduced *pro* and *con* as to the value of the premises covered by the contract for mining purposes, some of the witnesses testifying that minerals of considerable value are contained therein and others that the minerals are found in such varying quantities and infrequent places in the ledges as to render the mineral ores valueless and such as to render profitable returns impossible; that the expense of extracting the ores and the reduction of the same would never yield any net returns. These questions were all addressed to the trial court, which had to do with weighing the testimony given by the respective witnesses, also to consider the various theories advanced and determine the facts as to the worth or worthlessness of the premises for mining purposes.

The fact that here and there may be spots in the ledges which yield assays of promising value cannot justify this court in setting aside the findings of the trial court which had before it all the witnesses testifying to the value and also to the valuelessness of the properties in question, as well as the hopelessness of ever making them yield a profitable return and hence the futility of further expenditures thereon by any of the parties to this action under obligations, contractual or otherwise, to the plaintiffs herein, and the trial court having determined from all the testimony that it is humanly impossible to ever realize any net proceeds from the operation of said mining premises, we cannot, from anything we find in the transcript, see any reason for disturbing such conclusion.

Before taking up the alleged errors of the trial court in permitting the B. A. C. Company, a corporation, to come into this action by way of filing a cross-complaint, we may state that under the contract entered into by Batcher and Hoeppner in order for the plaintiffs to succeed, even though the corporation had not been permitted to come into the case, it will be necessary for the plaintiffs to establish that the defendant Hoeppner had first, out of the operation of the properties, derived net proceeds sufficient to pay the plaintiffs' claims or net proceeds properly applicable toward their payment, or that he had received "sale profits" from

said properties that should be applied in payment of the plaintiffs' demands, or that he had received as his share of the profits of the operation of the corporation which had been operating the premises dividends or profits applicable as net proceeds toward the payment of plaintiffs' demands, or that the defendant Hoeppner or the parties to whom he had transferred the properties had been guilty of fraud or of such negligent mismanagement as prevented the realization of any profits. All these issues have been decided by the trial court upon conflicting evidence against the contentions of the appellants herein. It is true, as appears from the testimony and the findings of the court, that the defendant Hoeppner received all but a little over two thousand of the ten thousand shares of the capital stock of the corporation and also received on the books of the corporation a credit in his favor of something over $68,000. The court finds that none of the capital stock of the company was ever sold; that no one has ever received any profit therefrom; and that the mine has not yielded minerals in excess of around $500. The book credit of $68,000 appears from the testimony simply to be entries evidencing money advanced by Hoeppner; the testimony being to the effect that all of the moneys expended, as hereinbefore referred to, were advanced by the defendant Hoeppner. The corporation itself, as a corporation, has not any money or secured any funds except through the advances made by the defendant Hoeppner.

[3] Even though we admit it to be irregular, does the ruling of the trial court in permitting the B. A. C. Company, a corporation, to file a cross-complaint in this action constitute reversible error? We think not, for the simple reason that under the terms and provisions of the contract hereinbefore set forth and considered the appellants have not shown themselves to be in anywise injured. The corporation has simply come in and admitted that it held the properties subject to the terms and conditions of the contract referred to. We fail to see how the plaintiffs have or could suffer detriment by such admission. They are rather favored because if there then existed any possibility of obtaining returns from the property the door was open for such opportunity. [4] There is another view which seems to us to render the presence of the corporation in this

action necessary to a determination of the rights of the parties thereto. The plaintiffs would have a right at any time to come in, establish what we have hereinbefore set forth as the requisite and necessary facts in order to lay sufficient foundation, or show sufficient cause to warrant a judgment in their favor, because as against the defendant Hoeppner and anyone claiming under the contract through him, there would exist a continuing obligation to operate the properties for the purpose of securing net proceeds therefrom with which to discharge payments agreed to be paid to the plaintiffs by the defendant Hoeppner whenever so received by him. This obligation or continuing duty could only be terminated by a decree of court ascertaining and determining the impossibility of such profits ever being realized and the legal futility of expending any more money upon properties worthless for mining purposes.

It must also be borne in mind that the persons expending money in the operation of the properties covered by the contract are, by the very terms of the contract, to first receive repayment of the moneys so expended and as soon as it is made to appear that such moneys never can be recovered by mining operations and the properties having been transferred by the plaintiffs without any provision for their return and without any intent that they should be returned, the only thing the trial court could do, or could have done, was to order a sale of the properties. Again, if such sale is irregular the plaintiffs have no reason to complain, they having no ownership in the property. The trial court has found upon conflicting testimony that they never can be paid out of the operation of the premises, which works, perforce, an extinguishment of the liability of anyone to make payment of the plaintiffs' demands. From this it follows that the ordering of a sale of the premises works no injury to the plaintiffs, but offers, though it may be very slight, the possibility of some money being derived or obtained that the court may say should be applied in making payment of the items set forth in plaintiffs' complaint. With our views thus expressed, we do not think it necessary to consider the questions tendered by appellants as to alleged conflict in the findings upon questions other than those hereinbefore set forth which are determinative,

65 Cal. App.—26

or whether a corporation can in this manner deliver over its properties. Of this latter question the plaintiffs, not being members of the corporation, are not in a position to complain.

For the reasons set forth herein, we think the judgment of the trial court should be affirmed, and it is so ordered.

Finch, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 21, 1924, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 20, 1924, and the following opinion then rendered thereon:

THE COURT.—In denying the application for transfer and decision by this court after judgment by the district court of appeal we express no opinion upon the question of the finality or conclusiveness of the so-called "interlocutory judgment." The determination of that question was not necessary to the decision affirming the judgment appealed from. Assuming that the first judgment was not final or conclusive and that the questions discussed by counsel herein were available to the appellants upon this appeal from the later judgment, we are satisfied with the reasoning and conclusion of the district court of appeal affirming the same.