OLIVER C. CLAY, Appellant, v. JAMES M. BROWN et al., Respondents.

St. Louis Court of Appeals, May 17, 1910.

1. ATTORNEY AND CLIENT: Employment of Attorney: Evidence. In an action by an attorney against a corporation and a stockholder thereof for services performed for the corporation in collecting fire insurance under an alleged contract of employment, the fact that the individual defendant's interest in the policy was only that of a stockholder was a circumstance to be weighed by the jury on the issue whether he was personally liable to plaintiff, there being nothing in the situation to preclude a finding of dual employment.

2. ————: ————: Failure to Answer Letters: Instruction. In an action by an attorney against a corporation and its president for services performed for the corporation, under an alleged contract of employment by both defendants, where there was evidence that the attorney wrote several letters to the president, stating that he had been employed, to which the latter failed to reply, an instruction that the failure to answer plaintiff's letters did not constitute an admission of defendant's liability under the contract alleged to have been made was erroneous, since, although such failure was not equivalent to an admission of liability, still it was a circumstance to go to the jury on the question whether a contract of employment had been made.

3. ————: ————: Evidence: Admissions. In an action by an attorney against a corporation and a stockholder thereof, for services in collecting insurance money, admissions made by the individual defendant as to the employment were competent against him, whether he was interested in the insurance money other than as a stockholder or not, or whether he was at the time acting as agent for the company.

4. CORPORATIONS: Officers: Delegation of Power: Employment of Attorney: Attorney and Client. While the president of a corporation could not delegate any discretion he had as such officer, he might empower his brother to speak to an attorney in behalf of the company and retain such attorney's services.

Appeal from Lewis Circuit Court.—*Hon. Chas. D. Stewart,* Judge.

REVERSED AND REMANDED.

*E. R. McKee* and *A. F. Haney* for appellant.

(1) The court erred in giving to the jury instruction No. 6 on behalf of defendants. (a) This instruction wrongfully excludes the jury from considering the admissions of defendants arising from the failure of defendant Brown to answer or respond to the two letters written to him by plaintiff in the latter half of December, 1906. 1 Ency. of Ev., pp. 359, 361; Learned v. Tillotson, 97 N. Y. 1, 48 Am. Rep. 508; Advertising Co. v. Wanamaker & Brown, 115 Mo. App. 270. (b) This instruction is erroneous for the further reason that the failure of defendant Brown to answer said letters is evidence of admission, not only against himself, but also against his co-defendant, Canton Milling Company. The property was in the name of the Canton Milling Company and the insurance was to be collected for it or in its name. Defendant Brown was president and manager and the spokesman and representative of the company in all its dealings with the world. Plaintiff was employed as attorney for both defendants and the agreement was that he would be paid by the defendants. Hence, plaintiff's letters to Brown asserting his claim of services performed in the matter of said property, operated also as notice thereof to the company. Mechem on Agency, sec. 729; Malecek v. Railroad, 57 Mo. 17; Smith v. Boyd, 162 Mo. 146. The managing officers of corporations have power to employ attorneys and counselors on behalf of their corporations, and they have

this power without express delegations of power or formal resolutions to that effect. Bank v. Gilstrap, 45 Mo. 419; Southgate v. Railroad, 61 Mo. 89; Rosenbaum v. Gilliam, 101 Mo. App. 126; Lewis v. Publishing Co., 77 Mo. App. 434; Maupin v. Mining Co., 78 Mo. 24; Thompson v. School District, 71 Mo. 495. (c) This instruction is erroneous for the further reason that the failure of defendant Brown to answer plaintiff's said letters is proper evidence of ratification by defendants of John Brown's act of employing plaintiff as their attorney. The authority or agency of a person may be shown by facts and circumstances showing that his acting as such was ratified. Robertson v. Clevenger, 111 Mo. App. 622; Middleton v. Railroad, 62 Mo. 579; Bank v. Fricke, 75 Mo. 178; Turner v. Railroad, 51 Mo. 501; Suddaith v. Lime Co., 79 Mo. App. 585. Neglect to promptly disavow such act will be binding on the corporation. Bank v. Fricke, 75 Mo. 178; Abbott's Trial Brief on Mode of Proving Facts (w. Ed.), 547. Said rule is applicable to corporations. Advertising Co. v. Wanamaker & Brown, 115 Mo. App. 270. (2) The court erred in giving to the jury instruction No. 3 on behalf of defendants. This instruction is erroneous because it debars the jury from considering the testimony of W. T. Hope to the effect that, sometime after the fire, defendant Brown told him that he had sent his brother, John Brown, to employ plaintiff to aid and assist in adjusting his insurance loss. (a) Said admission is proper evidence in support of plaintiff's case, because said James M. Brown is a party defendant herein, and there is evidence tending to show that he had obligated himself personally to the plaintiff in the matter of plaintiff's employment. Admissions of a party against his interest are always admissible in evidence against him. Sheperd v. Transit Co., 189 Mo. 362. An agent may contract in such a way as to render both himself and his principal responsible, whether his principal be or be not made known at the

time of the contract. Story on Agency, sec. 270; Nichols, Shepard & Co. v. Kern, 32 Mo. App. 6; Ziegler v. Fallon, 28 Mo. App. 295. (b) The evidence of said admission by defendant, Brown, to witness Hope is also proper evidence for the jury to consider as impeaching the testimony of said Brown as a witness—and although no foundation is laid therefor. Owens v. Railroad, 95 Mo. 69. (3) But, said admission of defendant, Brown, to witness Hope is admissible not only against himself, but also as original evidence against defendant Milling Co. Lea v. Mercantile Co., 42 So. 415, 8 L. R. A. (N. S.) 279; Jones v. Williams, 139 Mo. 1.

*Jerry M. Jeffries* for respondents.

(1) An agent, unless a mere ministerial one, is personal, and the authority cannot be delegated by such agent. Grady v. American C. Ins. Co., 60 Mo. 116; Bowman Co. v. Lickey, 86 Mo. App. 61; Land & Lumber Co. v. Chisom, 204 Mo. 371. (2) Admission or statement of an agent, that he is an agent is absolutely incompetent in the trial of a case for the purpose of establishing an agency. Bank v. Morris, 125 Mo. 343; Bank v. Leyser, 116 Mo. 151; Carp v. Ins. Co., 203 Mo. 295; Craighead v. Wells, 21 Mo. 404. (3) Declaration of an agent made after the transaction has been completed and in no wise connected with it, are mere hearsay and are inadmissible against the principal. The declaration of such agent to be admissible must be a part of the *res gestae* and within a scope of his authority. Ins. Co. v. Fillingham, 85 Mo. App. 534; Helm v. Car Co., 98 Mo. App. 419; Oil Co. v. Jackson Z. Co., 98 Mo. App. 324; Phillips v. Mfg. Co., 129 Mo. App. 396; Rodman v. Railroad, 185 Mo. 1. (4) While a corporation acts through its officers and agents, an officer is nothing more than an agent of such corporation, and to make his admission binding upon the company, such admission must be made contemporaneous with his per-

forming some business of the company. Ins. Co. v. Fillingham, 85 Mo. App. 534; Milling Co. v. Burns, 152 Mo. 350; Jones v. Williams, 139 Mo. 1. (5) The failure to answer letters asserting a demand is not an admission, by the person written to, of the indebtedness. Scott v. Haynes, 12 Mo. App. 597; Learned v. Tillotson, 97 N. Y. 1; Advertising Co. v. Wanamaker & Brown, 115 Mo. App. 270.

GOODE, J.—Plaintiff is an attorney at law practicing his profession in Lewis county. James M. Brown is president and chief stockholder in the Canton Milling Company, and is co-defendant with it. The Milling Company had a flour mill and elevator in Canton which were destroyed by fire in December, 1906, as were a large part of the contents. Policies of fire insurance had been issued on the property by some insurance companies to the amount of $18,500. Plaintiff alleges that thereafter and about December 12, 1906, he was employed by defendants as their attorney to advise and assist them in collecting the insurance on the property, or as much of it as could be collected, and defendants promised to pay him what his services were reasonably worth. Pursuant to this employment plaintiff rendered professional services to defendants, advising them about their claims against the insurance companies, with the result defendants were able to collect $16,500 of the insurance; that the reasonable value of his services was $500, for which he prayed judgment. In answer, defendant Brown denied the averments of the petition and further alleged he had no interest in the property covered by the insurance or in the insurance money except as a stockholder in the Canton Milling Company denied that either he or any one for him had contracted with plaintiff to collect the amounts due on the policies. The Milling Company for its separate answer denied

148 App—35

the averments of the petition regarding the employment of plaintiff by defendants to collect the insurance money due the Milling Company for its loss, denied plaintiff was retained or employed to assist in any way about the matter or to furnish advice or render any services whatever; denied that by his advice and assistance the Milling Company was able to collect $16,500 or any other sum from the insurance companies; alleged if plaintiff had anything to do with the collection of the money or gave any advice about it, the fact was unknown to defendant and it was done without any contract of employment entered into by defendant; alleged no dispute arose between the insurance companies and the Milling Company in regard to the loss, but the amount due the Milling Company was adjusted and paid without contest. Plaintiff testified thus: He was employed to represent defendant James M. Brown and the Milling Company December 11, 1906, two days after the fire; on said day John Brown, brother of defendant James Brown, entered plaintiff's office, stated who he was, and that his residence was in Vienna, Illinois; said his brother James M. Brown was sick in bed and had sent him to employ plaintiff to aid in the settlement of the loss with the insurance companies; plaintiff conferred privately with said John Brown, got all the particulars of the loss from him and gave him advice about getting the books of the company together, all bills of purchases and other competent evidence to show the amount of the loss; said he conferred with John Brown about thirty minutes, when the latter left and he (plaintiff) never saw him any more; said he wrote James M. Brown that John Brown had called and employed him in an insurance matter, and James Brown never replied to the letter; plaintiff wrote again, twice, but received no replies to those letters; on June 2d, he wrote the fourth letter, stating John Brown had employed him and asked James Brown to call and settle. To this letter James Brown replied, admitting the re-

Clay v. Brown.

ceipt of the previous letters, but denying plaintiff had ever been employed or that he (James Brown) or the Milling Company owed plaintiff anything. Other testimony was given tending to prove plaintiff had been retained by John Brown with the knowledge and by the direction of James M. Brown. It was proved about sixteen thousand dollars were paid the Milling Company by the insurance companies. John Brown testified he was not the agent of James Brown or the Milling Company to employ plaintiff and did not employ him, but merely said to plaintiff, a few days after the fire, if an attorney was needed or a law suit occurred, "we (meaning the company) would want an attorney to help Mr. Jeffries;" that the adjuster would probably arrive the next day, and if the matter was not adjusted and there had to be litigation over it, he (John Brown) would call on plaintiff and employ him. A witness testified James M. Brown told him some time after the alleged employment he (James M. Brown) had sent his brother John to engage plaintiff to assist in the adjustment of his insurance loss. This conversation occurred on the street in Canton, after defendant Brown had returned from Hot Springs. There being a conflict in the evidence, objections are raised on the appeal to instructions given by the court; but before examining the instructions we will notice the contention that as defendant Brown's only interest in the insurance policies was as a stockholder of the Milling Company, he could not, or at least it should be inferred he did not, employ plaintiff to act as attorney for him individually. The fact that defendant Brown's only interest in the policies was a stockholder, has a bearing on the probability of his having individually employed plaintiff. It is a circumstance to be weighed by the jury on the issue of whether defendant Brown is answerable personally to plaintiff. But the testimony for plaintiff tends unequivocally to prove John Brown retained plaintiff to represent both the Milling Company and

James M. Brown, and it was for the jury to decide whether plaintiff was employed at all, and if so, by one or both defendants. There is nothing in the situation or the evidence to preclude a finding of dual employment. Defendant Brown's large interest in the company may have led him to be willing and desirous to be a party to the contract and to pay in person part of the fee.

One of the instructions complained of and granted at the instance of defendants, told the jury delay, or even entire failure of defendant Brown to answer plaintiff's letters, was no evidence that John Brown had been authorized to employ plaintiff, and did not constitute an admission of his authority to do so nor an admission of defendant's liability under the contract alleged to have been made between plaintiff and John Brown for defendants. In view of the contents of the unanswered letters, we might not reverse the judgment if we found no other error in the record, but we think the instruction should not have been given. Failure to answer the letters was not equivalent to an admission of the contract or of liability on the part of defendant and so far the instruction was correct; yet we think the failure was a circumstance to go to the jury on the question of whether John Brown had retained plaintiff and by authority of the defendants. These letters were written to James M. Brown in December, shortly after the date of the alleged contract; they informed said Brown his brother John had called on plaintiff December 11th and had retained plaintiff as a lawyer to "represent you and aid you in and about your loss by fire in your mill and other property in Canton, Missouri." The letter further said plaintiff had written to said John Brown and asked him to call, but he had not replied and plaintiff wrote to renew his request; that plaintiff wished to see either John Brown or James M. Brown. Failure to answer the two letters no doubt might be explained so that they would have slight weight as evidence. But

their contents were such as, according to the common course of business, would usually have elicited a reply, repudiating John Brown's authority to employ plaintiff, or the employment itself, if plaintiff's services were not desired and defendant Brown believed he had not been employed, or believed if he had been, that John Brown had acted without authority. The letters were to be considered and weighed by the jury as evidence on those issues. [Learned v. Tillotson, 97 N. Y. 1; 1 Ency. of Ev. 359, 361; and see cases cited in St. Louis Gunning Adv. Co. v. Wanamaker & Brown, 115 Mo. App. 270.] As regards ratification by defendants of what John Brown did, even if he acted without authority, we will say the facts preclude the finding of an intention to ratify plaintiff's employment if it was not authorized in the first place. Touching this point the evidence is materially unlike the evidence in Gunning Co. v. Wanamaker & Brown, and we refer to the opinion in that case for our views (l. c., pp. 282, *et seq.*). The failure of defendant to answer plaintiff's letters is competent only on the issue of whether his employment was authorized and for the reason that men are apt to disclaim promptly such agreements when made by some one else in their behalf without their sanction. We are cited to Scott v. Haymes, 12 Mo. App. 517, as holding the omission to answer a letter constitutes no evidence on a controverted issue. The true application of this doctrine depends on the circumstances of cases. In the one just referred to, the party to whom the letter was addressed had previously expressly repudiated the alleged liability mentioned in the letter and could have done no more by answering it.

Error is assigned on an instruction which said unless the jury found defendant Brown had some interest in the collection of the policies other than as a stockholder of the Milling Company, the jury must not consider any admissions he had made, if they found he had made admissions, unless they also found such admis-

sions were made as agent of the Milling Company and while said Brown was acting as such agent within the scope of his authority and was carrying on some business of the Milling Company. The effect of this instruction was to exclude from the consideration of the jury as evidence against Brown individually, the admission he had made to Hope that he (Jas. M. Brown) had sent his brother to employ plaintiff to help collect the insurance money. Said admission was competent against defendant Brown, whether he was interested in the insurance money other than as a stockholder in the Milling Company, or not, and whether made while transacting its business or on some other occasion. [Schlicker v. Gordon, 19 Mo. App. 479.]

It is insisted James M. Brown had no power to authorize John Brown to act for the Milling Company, because the former himself was but an agent of said company and could not delegate his authority. James M. Brown was president of the Milling Company and could not delegate any discretion he had as such officer; but we know of no rule of law which would prevent him from employing his brother John to speak to plaintiff in behalf of the company and retain his services.

The judgment is reversed and the cause remanded. All concur.