EDWIN DOWNS, Respondent, v. RACINE-SAT-
TLEY COMPANY, a Corporation, and RACINE-
SATTLERY COMPANY OF KANSAS, a Cor-
poration, Appellants,

**Kansas City Court of Appeals, January 5, 1914.**

1. **CONTRACTS: Statute of Frauds: Questions of Fact.** This
action was instituted by the plaintiff to recover compensation
for personal services alleged to be orally contracted for by
the defendants in July, 1906. The defendants had two prin-
cipal defenses; first, that no oral contract was entered into
by the parties; second, that if there was such a contract, it
was made in the month of June, 1906, and being for services
that could not be fully performed within a year from that date
was void under the Statute of Frauds. *Held*, that under the
evidence adduced these were questions of fact for the jury to
determine.

2. **EVIDENCE: Admissions Against Interests.** If a party through
ignorance, oversight or mistake makes statements against his
interest which are not true, the jury are not bound to give
conclusive effect to such statements.

3. ———: ———. When plaintiff in his testimony states mat-
ters which are inconsistent with other evidence given by him,
the jury are entitled to infer that the former were mistakenly
made, or made in ignorance of the true facts and to accept
as true the contradictory evidence.

Appeal from Jackson Circuit Court.—*Hon. A. O.
Lucas*, Judge.

AFFIRMED.

*Ellis, Cook & Barnett* for appellants.

*Ellison A. Neel* and *John M. Cleary* for respond-
ent.

JOHNSON, J.—Action for breach of a contract
for services. Verdict and judgment were for plaintiff
in the sum demanded in his petition and the cause is

here on the appeal of defendant. There was no written contract for the services in question and the cause of action is founded on an alleged oral agreement made in the month of July, 1906, for the employment of plaintiff for a term beginning September 1, 1906, and ending July 1, 1907.

Defendant has two principal defenses, viz., first, that no oral contract was entered into by the parties and, second, that if there was such a contract it was made in the month of June, 1906, and being for services that could not be fully performed within a year from that date was void under the Statute of Frauds. Plaintiff does not controvert the rule of law involved in the last defense and the issue thus raised was tried in the circuit court on the theory that if the alleged oral contract was entered into in the month of July, plaintiff was entitled to recover and if it was made in the preceding month, he had no cause of action. This issue of fact was submitted to the jury and was resolved in favor of plaintiff. Counsel for defendant recognize the rule that prohibits an appellate court from interfering with a verdict on the ground that it is against the weight of the evidence but insist in their brief and argument that the verdict is unsupported by any substantial evidence and, therefore, that the court erred in overruling defendant's request for a peremptory instruction.

The facts of the case thus may be stated: Defendant, a corporation engaged in the manufacture and sale of agricultural implements and vehicles with headquarters at Racine, Wisconsin, maintained branch establishments in a dozen different cities, among them one at Kansas City, and plaintiff was the manager of the Kansas City business under a written contract which ended September 1, 1906. Defendant's president, whose office was at Racine, was its general executive officer, but it appears that an offi cer whose title we shall abbreviate to that of "sales

manager'' had authority to employ branch managers and that he had an assistant who was not invested with such authority. Prior to July 2, 1906, George B. Lowrie was the assistant but on that date he was promoted to the office of sales manager and a bulletin of his appointment was sent immediately to each branch office and was received at the Kansas City branch July 5, 1906. It appears from the evidence of plaintiff that Lowrie's predecessor, on one of his visits to the Kansas City office, had discussed with plaintiff the subject of his employment for another year beginning September 1, 1906, at a reduced salary but no definite agreement was reached. Plaintiff expressed a willingness to continue in the service for another year at a salary of four thousand dollars and, apparently, this offer met the approval of the sales manager, but the matter was left unsettled. The proposed reduction of plaintiff's salary does not appear to have been prompted by dissatisfaction with his management of the business but was the result of a determination of the chief executive officers to make a general reduction in the expenses of the Kansas City branch. Another proposed retrenchment related to the rental account. The office and sample rooms were kept in the Woodward building in the ''West bottoms'' of Kansas City while the warerooms were in another building known as the Duke building. The lease in the Woodward building was about to expire and the question of renewing it or of moving the office and sample rooms to the Duke building was under discussion. By removing the offices a considerable saving in rent could be effected but the new quarters would be less desirable than the old and it was feared such change might cause a serious loss of business. Plaintiff advocated the renewal of the lease in the Woodward building and this subject was discussed by him and the sales manager on the occasion to which we have referred but no definite conclusion was reached.

Matters affecting the business at Kansas City were in the state described on Lowrie's accession to the office of sales manager. Plaintiff's evidence tends to show that in a day or two after the bulletin of Lowrie's promotion was received, he appeared at the Kansas City office and took up with plaintiff the two subjects of a renewal of plaintiff's contract of employment for another year and of a renewal of the lease in the Woodward building. Referring to the first of these subjects, Lowrie stated he desired to employ plaintiff for another season but as the company had decided to change the end of its fiscal year from September 1st to July 1st, he would employ plaintiff for a term ending July 1, 1907, on the basis of a salary of four thousand dollars per year, and that plaintiff accepted this proposal and the parties then shook hands over the agreement. Further, plaintiff's evidence shows that he requested Lowrie on returning to Racine to write him a letter of confirmation and that Lowrie promised to write such a letter. The promise was not kept but was renewed by Lowrie in August and again broken. The oral contract of employment, as stated by plaintiff, treated the promised written confirmation not as an essential to the creation of the contract but merely as written evidence that such contract had been made. Plaintiff received notice of his discharge September 5, 1906, five days after the beginning of his performance of the oral contract. He continued in the service of defendant a week longer when he was relieved, against his protest, by his successor.

The evidence of defendant is to the effect that Lowrie visited the Kansas City office June 29, 1906, while he was still assistant sales manager and, as such, had no authority to bind defendant to a contract with plaintiff. He states that the only subject he discussed with plaintiff was the matter of the lease

175 Mo. App. 25

in the Woodward building and that nothing was said about a renewal of plaintiff's contract. Further he states he was not in Kánsas City at all during the month of July. Facts and circumstances in evidence very strongly corroborate his statements especially his assertion relating to the time of his visit.

But we cannot agree with the contention of counsel for defendant that conclusive effect should be accorded defendant's evidence on the issue of Lowrie's alleged visit to Kansas City in July. We are willing to concede the evidence tends to show that Lowrie was in Kansas City June 29th, but after all is said in favor of defendant's evidence that may be said, the contention of Lowrie that he did not visit the Kansas City office in July immediately after the issuance of the bulletin, is met, not only by the testimony of plaintiff and two other witnesses, but by facts and circumstances corroborative of their testimony. As, for example, the correspondence between defendant and plaintiff during the months of July and August was of a tenor suggestive of the idea that both parties regarded the subject of their future relations as settled. Plans were discussed and instructions were given by defendant which would require another year for their consummation and we fail to find the slightest hint of the thought that plaintiff's employment would cease with the termination of the existing contract. We do not find it necessary to discuss the details of the evidence. Suffice it to say that, as a whole, it presents the disputed question of the time of Lowrie's visit as one of fact for the triers of fact to determine and we shall regard as proved the assertion of plaintiff that the oral agreement for another season's employment was made in July and not in June.

Counsel for defendant invoke the rule "that a plaintiff in a civil case is conclusively bound by every declaration and admission against his interest made while testifying before the court and jury" and point

to the following cases as instances of the judicial recognition and application of that rule: State v. Brooks, 99 Mo. 142; Feary v. Railway, 162 Mo. 75; State ex rel v. Lichtman, 131 Mo. App. 65; Shirts v. Overjohn, 60 Mo. 308; Wright v. Town of Butler, 64 Mo. 165.

In the Feary case the question of the legal effect of statements made by a plaintiff in his testimony against his interest came before the court in an instruction which told the jury that "all statements made by him, if any, which are against his own interest must be taken as true but his statements in his own favor are only to be given such credit as the jury under all the facts and circumstances in evidence deem them entitled to." The court approved that instruction saying "statements against interest are called admissions in civil cases and confessions in criminal ones. They are taken as true for the purposes of the case, because no man would make them if they were not true. If confessions are enough to hang a man or to send him to the penitentiary under the criminal statutes, it is hard to see why admissions should not be enough to conclude him in a civil suit."

But in more recent cases, of which that of Huff v. Railway, 213 Mo. 495, may be selected for review, such instruction is condemned on the grounds that it not only singles out the plaintiff and comments on his testimony but that it erroneously declares the law. The court rejects the idea that a party testifying as a witness should be conclusively bound by the statements he may make against his interest and announces the better and more just rule that if a party through ignorance, oversight or mistake makes statements against his interest which are not true, the jury are not bound to give conclusive effect to such statements.

To the same effect are Meyers v. Railroad, 171 Mo. App. 283; Lehner v. Railroad, 110 Mo. App. 215; Zander v. Transit Co., 206 Mo. l. c. 461; Connor v. Railroad, 181 Mo. 397; Ephland v. Railroad, 137 Mo.

l. c. 198; Quinn v. Railroad, 218 Mo. l. c. 556; Norris v. Railroad, 239 Mo. l. c. 719.

In the case last cited an instruction, as presented, told the jury that "all statements made by her, if any, which are against her interest, must be taken as true, but her statements in her own favor are only to be given such credit," etc. The court modified the instruction to read "all statements made by her, if any, which are against her interest, *are presumed* to be true," etc. The Supreme Court approved the modifications, thus, in substance, reaffirming the doctrine of the Huff case.

It may be conceded, as claimed by defendant, that plaintiff in his testimony stated facts which are inconsistent with his evidence that Lowrie's first visit to Kansas City was in July, but as we have shown, such statements did not conclusively bind plaintiff. The jury were entitled to infer that they were made mistakenly or in ignorance of the true facts, and to accept as true the contradictory evidence. The law does not demand infallibility of any witness nor unduly punish a party for honest mistakes or inconsistencies in his testimony.

Defendant complains that the court improperly admitted in evidence a self-serving telegram sent by plaintiff to defendant September 3rd. This telegram and its answer, both introduced in evidence, related to the subject of the contract and since the telegram asserted the existence of a contract and the answer, which was sent by Lowrie, did not deny the assertion, we fail to perceive any good ground for rejecting this correspondence as self-serving. Certainly if defendant's answer had expressly admitted the existence of the contract the correspondence would have possessed evidentiary value and we think the implied admission was pertinent evidence bearing on the subject of the character of the existing relationship between the parties.

The point relating to the alleged misconduct of one of plaintiff's attorneys in his argument to the jury cannot be considered, since no exceptions to the objectionable remarks are preserved in the record. The judgment is affirmed. All concur.