[Civ. No. 6892.   First Appellate District, Division One.—January 24, 1930.]

SUDDEN LUMBER CO. (a Corporation), Respondent, v. F. M. SINGER et al., Defendants; ROBERT J. WALSH, Appellant.

Goldman & Altman for Appellant.

Philip S. Ehrlich and Albert A. Axelrod for Respondent.

THE COURT.—The plaintiff, a materialman, furnished F. M. Singer, a contractor, with lumber to be used and which was used in the construction of a building on premises owned by defendant and appellant, Robert J. Walsh. The

contractor having failed to pay for the lumber, the present action was brought against the owner of the premises to foreclose plaintiff's claim of lien thereon and for a personal judgment against the contractor and defendants Charles Gust and R. O. Ostrander, who were sureties upon a bond filed by the contractor. Defendants Singer and Ostrander were not served with summons and the case was tried against Walsh and Gust. Judgment was entered against Gust for $4,000, the value of the lumber, and $1.77, the expense of filing the claim of lien, and against Walsh for the foreclosure of the lien and sale of the premises. The latter has appealed from the judgment.

The complaint alleged that the bondsmen were not good or sufficient sureties at the time of the execution of the bond or thereafter. The bond, which was for $9,218, in addition to a condition for the performance by the contractor, was also, as provided by section 1183 of the Code of Civil Procedure, conditioned for the payment in full of the claims of all persons performing labor upon or furnishing materials to be used in the work, and by its terms was made to inure to the benefit of all such persons. Appellant alleged, and the court found, that the contract price of the building was $18,435; that he had paid to the contractor, who had abandoned the work before completion, the sum of $11,553.75, and in addition the sum of $600 as architect's fees, with $2,136.08 to complete the building, the total payments thereon being $14,289.83; that claims of lien which, including that of plaintiff, aggregated $11,318.23, had been filed thereon, and there remained in his hands as the balance of the contract price the sum of $4,145.17.

Appellant denied that the bond was insufficient and it was stipulated at the trial that if the court should find the bond to be sufficient under the provisions of section 1183 of the Code of Civil Procedure then the plaintiff would be entitled to recover from appellant but 36.6 per cent of his claim, namely, $1464.

The court found that neither at the time the bond was executed nor at any time thereafter was either bondsman a good or sufficient surety.

As grounds for the appeal it is contended that the above finding is unsupported; that by suing the sureties and obtaining a judgment against one of them the plaintiff is

estopped from asserting a claim against the property in excess of the contract price, and that an order by the trial court permitting the plaintiff to file a second amended and supplemental complaint was prejudicially erroneous.

■ Appellant testified that he had never seen Ostrander and that his first and only meeting with Gust was after the transaction in question; that before the bond was executed he inquired of the assistant cashier of a bank as to Gust's financial condition, and was told that the latter had equities in second mortgages which the bank controlled sufficient to cover his liability on the bond, and that the witness requested his architect to make inquiries regarding Ostrander and was informed by the architect "that he was positive that Ostrander had securities to the amount of $50,000 or $60,000." The witness further stated that Ostrander was at the time a contractor engaged in business near Antioch. According to Gust, who testified that he could not read English, he stated to the contractor before signing the bond that he had no money or property, further testifying in that connection, "I had lots of bills at the time." After stating in effect that he and Ostrander were together when the bond was signed, he testified: "I knew Mr. Ostrander. He worked for Mr. Singer at the time I knew him. I have not seen him since he signed the bond." The witness also stated: "At the time I executed the bond I had fourteen houses subject to mortgage. My equity in the property over the mortgages at that time was about $10,000. The holders of the first mortgages on the properties which I had at that time have since foreclosed. The only property which I have today is my home. It is worth $7,000. It is subject to a mortgage of $4,000. . . . It is homesteaded."

The testimony of the last witness leaves it doubtful whether the person referred to by the architect signed the bond. The circumstances shown strongly support the conclusion of the trial court that the bondsmen, and particularly defendant Gust, were at no time sufficient, and amply sustain the burden which in this respect, according to *Tyler* v. *J. I. Mitrovich etc. Co.*, 47 Cal. App. 59 [190 Pac. 208], rested upon the plaintiff.

■ While, as urged by appellant, the uncontradicted and unimpeached testimony of a witness may not be arbitrarily disregarded (*Stewart* v. *Silva*, 192 Cal. 405 [221

Pac. 191]), nevertheless the presumption that a witness speaks the truth may be overcome by the character of his testimony; and the jury, or the trial court sitting as a jury, are the exclusive judges of his credibility (Code Civ. Proc., sec. 1847). There was sufficient in connection with the testimony of the witness Gust to make the code section peculiarly applicable and to justify the trial court in refusing to give full credit to all of his testimony.

The bond provided in accordance with the statute (Code Civ. Proc., sec. 1183) that the persons for whose benefit it was given should have a right of action thereon in any suit brought to foreclose a lien provided for in chapter 2 of title IV of part 3 of the Code of Civil Procedure, or in a separate suit. The purpose of requiring a bond to accompany the contract is to create an additional fund or security for the satisfaction of lien claimants (*Hubbard* v. *Jurian,* 35 Cal. App. 757 [170 Pac. 1093], *Sunset Lumber Co.* v. *Smith,* 91 Cal. App. 746 [267 Pac. 738], 17 Cal. Jur., Mechanics' Liens, sec. 46, p. 75), and also to limit the owner's liability to the contract price (*Roystone Co.* v. *Darling,* 171 Cal. 526 [154 Pac. 15]); but to have the latter effect it must, among other things, conform to the statutory requirement that the sureties be good and sufficient (*S. R. Frazee Co.* v. *Arnold,* 46 Cal. App. 74 [188 Pac. 822]); otherwise it furnishes no protection to the owner against liens for labor and material on the building (*Roystone Co.* v. *Darling, supra*).

It is claimed, however, that the plaintiff, having procured the entry of a judgment against one of the bondsmen, is thereby estopped from asserting the insufficiency of the bond as against the owner. While, as held in *Tyler* v. *J. I. Mitrovich etc. Co., supra,* a party cannot denounce a contract as void and at the same time demand the enforcement of such of its provisions as are favorable to himself, here the bond was not found to be nor was it void, but the same was insufficient to afford protection to the owner.

The bondsmen, notwithstanding that they were not good and sufficient sureties, were nevertheless liable upon their contract (*Hammond Lumber Co.* v. *Willis,* 171 Cal. 565 [153 Pac. 947]); and were properly joined as defendants with the contractor and owner (*Holden* v. *Mensinger,* 175 Cal. 300, 304 [165 Pac. 950]; *Hillcrest Co.* v.

*Schrier,* 41 Cal. App. 624 [183 Pac. 239]). The entry of judgment against one of them did not absolve the property of the owner from liability, and their lack of the statutory qualifications afforded sufficient ground for refusal to restrict plaintiff's recovery to the amount of the contract price (*S. R. Frazee Co.* v. *Arnold, supra*).

The action was commenced on January 28, 1927, and on May 16, 1927, the plaintiff filed his amended complaint. No attack was made in these pleadings upon the sufficiency of the sureties. Appellant answered on June 15, 1927, and on February 14, 1928, the plaintiff moved for leave to file a second amended and supplemental complaint in which the insufficiency of the sureties was alleged. The motion was granted. The appellant contends that the notice of motion was insufficient and that the order was an abuse of discretion. The affidavit in support of the motion alleged that appellant on numerous occasions after the action was filed stated that the sureties were worth the amount of the bond over and above their just debts and liabilities, exclusive of property exempt from execution, and that plaintiff ascertained their insufficiency subsequent to the filing of his amended complaint. Appellant in reply denied making the statement alleged and averred that the original pleadings not having attacked the sufficiency of the sureties he had made no attempt during the year last past to ascertain their sufficiency, and that the whereabouts of Ostrander were unknown to appellant.

Where there is a conflict in the affidavits those in favor of the prevailing party must be taken as true and the facts stated therein must be considered as established (*Doak* v. *Bruson,* 152 Cal. 17 [91 Pac. 1001]; *Corgiat* v. *Realty Mortgage etc. Corp.,* 86 Cal. App. 37 [260 Pac. 573]); **[7]** and if the plaintiff was misled by the statements of appellant there was no abuse of discretion in granting leave to amend. Moreover, it sufficiently appears from the evidence taken at the trial that neither bondsman was at any time a good and sufficient surety, and that appellant was not justified in accepting him as such.

But it is contended that this evidence, not having been before the court when the motion was granted, cannot cure the error. Should error be conceded it was not reversible, however, as the above evidence shows that appellant

was not prejudiced thereby (*Gill* v. *Southern Pac. Co.*, 174 Cal. 84 [161 Pac. 1153]; *Shull* v. *Crawford*, 33 Cal. App. 36, 41 [164 Pac. 330]; *Batcher* v. *Hoeppner*, 65 Cal. App. 385 [224 Pac. 117]). The motion was addressed to the sound discretion of the trial court, and we cannot say that the order was an abuse of discretion.

The findings of the court are fully supported and on an examination of the entire case, including the evidence, we are satisfied that no error has been shown which can reasonably be said to have resulted in a miscarriage of justice.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 21, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 20, 1930.

All the Justices concurred.