[Civ. No. 8543. First Appellate District, Division One.—July 20, 1932.]

JAMES S. SIMPSON, Plaintiff and Appellant, v. ERNEST F. BERGMANN, as Executor, etc., et al., Defendants and Respondents; E. C. POWER et al., Defendants and Appellants.

SOUTHERN LUMBER COMPANY (a Corporation) et al., Plaintiffs and Appellants, v. ERNEST F. BERG-MANN, as Executor, etc., et al., Defendants and Respondents; E. C. POWER et al., Defendants and Appellants.

2

Jensen & Holstein and Anson Hilton for Plaintiffs and Appellants.

Victor A. Chargin, A. P. Lindsay, D. T. Jenkins and R. R. Bell for Defendants and Appellants.

D. M. Burnett, John M. Burnett and John J. Jones for Respondents.

THE COURT.—In 1927 defendant Raymond R. Allison, a contractor, entered into a contract with Fred H. Bergmann for the construction of a dwelling-house on two lots near the town of Los Gatos. Prior to the commencement of work the contract with the plans and specifications was duly filed in the office of the county recorder of Santa Clara County. At the same time a bond was delivered to Bergmann, which was also filed. The contractor began work, but before the completion of the structure disputes arose between the contractor and Bergmann and his architect, and the work ceased. Bergmann thereupon made written demand upon the contractor and upon the Southern Lumber Company, a corporation, whose name appeared as surety on the bond, to complete the structure. The demand was not complied with, and Bergmann proceeded with the work. Before the dwelling was finished Bergmann died, and his wife, Louise Bergmann, completed the work. Upon Bergmann's death it developed that the lots were owned by him in joint tenancy with his wife, and she was thereafter decreed to be the sole owner thereof by right of survivorship. Ernest F. Bergmann was appointed executor of the last will and testament of the deceased, and in the meantime numerous persons, claiming to have furnished labor and materials in the construction of the dwelling, filed their claims of lien and brought actions to foreclose. Among these claimants were the Southern Lumber Company, E. C. Power, Bryant B. Bailey, James S. Simpson, S. H. Thompson and Frank A. Bell, and in each action said executor and Louise Bergmann were made defendants. The executor denied ownership and all responsibility in the matter. Louise Bergmann also answered, denying the allegations of

the respective complaints; and with regard to that of the Southern Lumber Company, alleged that after the abandonment of the work by Allison she and her husband, then living, made written demand upon this corporation, as surety on the bond, that it fulfill the contract; that it failed to do so, and that consequently she and her husband were forced to take over and complete the work; further alleging by way of counterclaim that by reason of such failure she was compelled to expend $8,577 over and above the contract price in completing the structure.

The actions were consolidated for trial. Among other things, the court found that the bond was executed for a sufficient consideration by the contractor as principal and Southern Lumber Company and W. F. Button as sureties, guaranteeing performance by the contractor and agreeing to deliver to the owner the building and premises free and clear of encumbrances. Judgment was entered in favor of Louise Bergmann upon her counterclaim in the sum of $2,528.76; also in favor of the several claimants against the contractor, and the Southern Lumber Company as surety. The Lumber Company was allowed nothing on its claim, and it was decreed that none of the claims should be enforced against the property.

The Lumber Company and claimants Power, Bailey, Simpson, Thompson and Bell have appealed from the judgment.

The company claims that no cause of action upon the bond was stated in the complaints; that the admission of the bond in evidence over objection was error; that Louise Bergmann had no cause of action against the company and that the sureties upon the bond were released from liability by changes in the plans as the work progressed; further that certain findings are unsupported. The other appellants contend that they were entitled to a judgment against the property as well as against the contractor and his sureties.

█ As to the pleadings, it was alleged that a bond was executed, and a copy thereof was in some instances annexed thereto as an exhibit. No objection was made by demurrer or otherwise to the sufficiency of any of the pleadings, and the cause appears to have been tried on the assumption that they stated a cause of action on the bond. Where such is the case objections to the pleadings will be deemed to have

6

been waived (*Wagner* v. *Ruppe*, 56 Cal. App. 233 [204 Pac. 1095]). ■ Moreover, where several actions for the foreclosure of mechanics' liens and for judgments against the contractor and his sureties are consolidated for trial, the allegations of the various complaints may be taken together and treated as one pleading, the allegations in one remedying defects or omissions in another (*Tyler* v. *Mitrovich Building Co.*, 47 Cal. App. 59 [190 Pac. 208]).

■ With regard to the claim of Louise Bergmann, while as a rule the act or contract by one joint tenant respecting the joint property without the authority or consent of his cotenant cannot bind or prejudicially affect the latter (33 Cor. Jur., Joint Tenancy, sec. 22, p. 913), where the act of one joint tenant is beneficial to his cotenant such act will be regarded as the act of all in so far as sharing in the benefits thereof is concerned (*Crary* v. *Campbell*, 24 Cal. 634). ■ Mrs. Bergmann testified that she and her husband were building the house, and this was alleged in substance in her pleading. While she was not named in the bond this evidence is sufficient to show that her husband was also acting for her in the transaction, and notwithstanding the agency was undisclosed she could maintain an action for damages on the contract (1 Cor. Jur., Agency, sec. 131, p. 854; *Schader* v. *White*, 173 Cal. 441 [160 Pac. 557]; *McKee* v. *Cunningham*, 2 Cal. App. 684 [84 Pac. 260]; *Eddy* v. *American Amusement Co.*, 9 Cal. App. 624 [99 Pac. 1115]; *Wilcox-Rose Construction Co.* v. *Evans*, 9 Cal. App. 118 [98 Pac. 83]; *Eldridge* v. *Mowry*, 24 Cal. App. 183 [140 Pac. 978]; *Cowan* v. *Tremble*, 111 Cal. App. 458 [296 Pac. 91]).

■ The bond was signed by the contractor as principal and by W. F. Button as surety. There was also affixed thereto the name of the Lumber Company as one of the sureties. Its name, "Southern Lumber Co.," was placed thereon by means of a rubber stamp, below which appeared the signature "M. E. McLeod, Asst. Mgr." McLeod testified in substance that he signed the bond at the office of the Lumber Company, the purpose being that the company might get the business of furnishing the lumber on the job. He would not say that he affixed the stamp thereto, but stated that he might have done so and that the company had such a stamp at its office; further, that he acknowledged

its execution before the attorney for the company, who was also a notary. He also testified that he owned no property. The record discloses no direct evidence of his authority to execute the bond on behalf of the company, or that the company was expressly empowered by its charter to do so. Button, who was also in the employ of the company, testified that the bond was brought to him by McLeod, who stated, "This is the bond for Allison for the Bergmann job. If you sign it we get the job." This witness further stated that at the time of its execution he was married and owned a home worth about $5,000, but had no other assets. After this transaction the attorney for the Bergmanns wrote to the Lumber Company, referring to the bond and stating that the company had executed it as surety, and calling attention to the fact that the contract was not being performed according to its terms. No reply was made to the letter.

■ The rule appears to be well settled that trading corporations may in furtherance of their interests extend financial aid to their customers by way of guaranteeing their obligations; and guaranties of this nature are brought within the scope of the implied powers of the corporation (7 Cal. Jur., Corporations, p. 67). A corporation engaged in carrying on a business which it is authorized to do by its articles and the law under which it is organized, has implied power to make all contracts which are essential to the transaction of its ordinary affairs (Civ. Code, sec. 354, subd. 9, as it existed prior to the revision of 1931), or the making of which is an appropriate means by which it may reasonably be expected that the business in which the corporation is engaged will be advanced, or which tends directly to promote the business authorized by its articles and which it is doing (*Woods Lumber Co.* v. *Moore,* 183 Cal. 497 [11 A. L. R. 549, 191 Pac. 905]); and it has been held that a lumber company may become surety on the bond of a building contractor to induce him to purchase of the company the lumber to be used in such building (*Central Lumber Co.* v. *Kelter,* 201 Ill. 503 [66 N. E. 543]).

It is a fair conclusion from the evidence that McLeod was in charge of the company's business at the place where the bond was signed; and, as stated, the company was later notified of the claim that it had executed the same. ■

If a corporation allows its officers to conduct its business, and third parties act upon the apparent authority thus shown, it cannot defeat the rights of such persons arising from transactions done and completed under such ostensible authority (*Venice* v. *Short Line Beach Land Co.*, 180 Cal. 447 [181 Pac. 685]).

While ordinarily the fact that a letter is received containing false statements does not impose upon the recipient the duty to reply thereto, nevertheless this depends upon the circumstances, and, as said by Mr. Wigmore, "each case must stand upon its own facts". (2 Wigmore, Evidence, sec. 1073.) The test is found in whether the circumstances are such that in the ordinary practice of mankind the party receiving it would have answered it if he did not acquiesce in the statements it contained (22 Cor. Jur., Evidence, sec. 364, p. 326). The ground of admissibility, however, is not that the letter affords any proof that the statements therein are true, but that silence, when such statements are calculated to draw forth a reply, may be the ground for an inference that the statements are true (*Keeling-Easter Co.* v. *Dunning*, 113 Me. 34 [92 Atl. 929]; *Ross* v. *Reynolds*, 112 Me. 223 [91 Atl. 952]). Here the inference sought to be drawn was the existence of a contract; and the instances in which such letters have been admitted have usually been cases where they were part of a mutual correspondence, or referred to an existing contract. (See notes, Ann. Cas. 1917D, 790; 8 A. L. R. 1163; 34 A. L. R. 560; 55 A. L. R. 460.)

In the present case, while there was no previous correspondence or contract directly between the company and the owner, we have the circumstance that the Lumber Company was furnishing the lumber to be used in constructing the dwelling, which it knew was being erected by Allison as contractor; and when during the course of construction a claim was made by the owner that the company was surety for performance by Allison, and that the latter was failing to comply with his contract, the letter reasonably called for some reply. How much weight should be given the fact that no reply was made was of course a question for the trial court, but that it had some probative value seems clear, and this conclusion is supported in principle by the following cases: *Ross* v. *Reynolds, supra; Keeling-Easter Co.* v.

*Dunning, supra; Sonnesyn* v. *Hawbaker,* 127 Minn. 15 [148 N. W. 476] ; *Clay* v. *Brown,* 148 Mo. App. 541 [128 S. W. 803] ; *Downs* v. *Racine-Sattley Co.,* 175 Mo. App. 382 [162 S. W. 331] ; *Harmon* v. *Leberman,* 39 Tex. Civ. App. 251 [87 S. W. 203] ; *Mahoney* v. *Kennedy,* 172 Wis. 568 [179 N. W. 754] ; *Murphey* v. *Gates,* 81 Wis. 370 [51 N. W. 573]. Furthermore, if McLeod was without authority to execute the bond the fact was peculiarly within the knowledge of the company, and notwithstanding this it offered no evidence on the question. The case is, we think, within the rule that where the evidence tends to prove a material fact which imposes a liability upon a party, the failure to produce evidence to the contrary where he has the power to do so is ground for the inference that such evidence if produced would be unfavorable to him (Wigmore, Evidence, sec. 285; *Bone* v. *Hayes,* 154 Cal. 759 [99 Pac. 172] ; *Alloggi* v. *Southern Pac. Co.,* 37 Cal. App. 72 [173 Pac. 1117]). We are satisfied that sufficient was shown to warrant the admission of the bond in evidence, and to reasonably justify a finding that the company was bound by the act of McLeod.

In this connection it is urged that there was no allegation or finding that the Lumber Company was estopped to deny that it became a surety. As stated, the pleadings alleged in substance that the bond was executed by the Lumber Company as surety. In an action based upon a contract made by an agent it is proper to allege that it was made by the principal; and the rule is the same where an ostensible agency based upon estoppel is sought to be established (*Resetar* v. *Leonardi,* 61 Cal. App. 765 [216 Pac. 71]), and the findings may follow the language of the pleadings,—which was done here (24 Cal. Jur., Trial, sec. 213, p. 985).

As work by the contractor progressed changes were made therein which did not correspond in every particular with the original plans and specifications. It is claimed that this released the sureties from liability.

The contract provided that should the owner or architect at any time during the progress of the work request any alterations in, additions to or omissions from the contract, with the plans and specifications, either of them should be at liberty to do so, and the same should not in any way affect or make the contract void. Where a building contract con-

10

tains such a provision the surety will be presumed to have known thereof and to have agreed to be bound thereby (*People's Lumber Co.* v. *Gillard,* 136 Cal. 55 [68 Pac. 576]; *Roberts* v. *Security Trust & Sav. Bank,* 196. Cal. 557 [238 Pac. 673]).

■ The Lumber Company claims that certain findings are unsupported. The court found that demand was made by Louise Bergmann that Allison and the company complete the contract. Several letters were written by the attorney employed by her husband and the architect, making such demands. As stated, her husband was her agent, and these demands inured to her benefit. The court found that she was forced to take over and finish the work and to expend certain sums therefor. It is not disputed that due to the default of the contractor her husband took over the work, and that upon his death she continued it, and the evidence was amply sufficient to show the amount found to have been expended in completing the building.

One of the objections in this connection made by the Lumber Company seems to be that she was not a party to the contract, and not concerned with the completion of the structure. For the reasons stated above this contention is untenable.

Other findings are attacked upon the ground that they erroneously assume that the Lumber Company executed the bond, and are consequently unsupported; but, as stated, the evidence sufficiently sustains the conclusion that the company became a surety.

Other objections to the findings are also without merit.

■ The court refused to allow proof by the Lumber Company of its claim for materials furnished. This was proper, as a surety on a building contractor's bond who has guaranteed the delivery of the building free of liens, as was the case here, cannot enforce a lien against the property (17 Cal. Jur., Mechanics' Liens, sec. 48, p. 80; *Blyth* v. *Robinson,* 104 Cal. 239 [37 Pac. 904]; *Ganahl* v. *Weir,* 130 Cal. 237 [62 Pac. 512]; *Burnett* v. *Glas,* 154 Cal. 249 [97 Pac. 423]; *Barrett-Hicks Co.* v. *Glas,* 9 Cal. App. 491, 496 [99 Pac. 856]).

■ With regard to the appeal by the parties other than the Lumber Company, as stated, the trial court refused to decree a lien in their favor against the property. They con-

tend that no equities were shown which justified the court in so limiting their relief.

At the time of the transaction section 1183 of the Code of Civil Procedure provided: " . . . In case said original contract shall before the work is commenced be so filed, together with the bond of the contractor with good and sufficient sureties in an amount not less than 50% of the contract price named in said contract, which bond shall in addition to any conditions for the performance of the contract be also conditioned for the payment in full of the claims of all persons performing labor upon or furnishing materials to be used in such work, and shall also by its terms be made to inure to the benefit of any and all persons who perform labor upon or furnish materials to be used in the work described in said contract so as to give such persons a right of action to recover upon said bond in any suit brought to foreclose the liens provided for in this chapter, or in a separate suit brought on this bond, then the court must, where it would be equitable to do so, restrict the recovery under such lien to an aggregate amount equal to the amount found to be due from the owner to the contractor, and render judgment against the contractor and his sureties on said bond for any deficiency or difference there may remain between said amount so found to be due to the contractor and the whole amount found to be due to claimants for such labor or materials or both." (Stats. 1911, p. 1313.) The record contains no evidence as to the sufficiency of the Lumber Company as a surety; but it appears beyond question that the bond was executed for the purpose of complying with the statute, and it is presumed that none of the parties intended to commit a fraud by filing an insufficient bond. The burden of showing its insufficiency rested upon appellants (*Tyler* v. *Mitrovich etc. Co., supra; Sudden Lumber Co.* v. *Singer,* 103 Cal. App. 386 [284 Pac. 477]). The amount of the bond was $7,950; and as to Button, the other surety, it is clear from his testimony that he was not a good or sufficient surety either at the time the bond was executed or subsequently. The bond provided, in accordance with the above section, that the persons for whose benefit it was given should have a right of action thereon in any suit to foreclose a lien provided for in chapter II of title IV of part III of the Code of Civil Procedure, or in a separate suit on the

bond. The purpose of such a bond was to create an additional fund or security for the satisfaction of lien claimants (*Sunset Lumber Co.* v. *Smith,* 91 Cal. App. 746 [267 Pac. 738]; *Hubbard* v. *Jurian,* 35 Cal. App. 757 [170 Pac. 1093]; 17 Cal. Jur., Mechanics' Liens, sec. 46, p. 75), and to limit the owner's liability to the contract price (*Roystone Co.* v. *Darling,* 171 Cal. 526 [154 Pac. 15]; *Sudden Lumber Co.* v. *Singer, supra*). It has been held that to have the latter effect it must conform to the statutory requirement that the sureties be good and sufficient (*S. R. Frazee Co.* v. *Arnold,* 46 Cal. App. 74 [188 Pac. 822]). However, as provided by the statute and held in the case last cited, the court has discretionary power in cases of this character, and its conclusion that it would be equitable to restrict the recovery to the contractor and his sureties cannot be disturbed in the absence of a plain abuse of discretion. Here there appears no question regarding the sufficiency of the Lumber Company as a surety, or its ability to meet all demands against it under the bond. Doubtless this was one of the considerations which moved the court to restrict recovery to a judgment against the contractor and his sureties; and we cannot say that it abused its discretion in so doing.

We are satisfied that the conclusions of the trial court are fairly sustained, and that no error has been shown which would warrant a reversal of the judgment.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 19, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 15, 1932.